IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

------------------------------------------------------------------ X

MAHMOAD ABDAH,     :
     Detainee, Camp Delta,     :
     Guantánamo Bay Naval Station,     :
     Guantánamo Bay, Cuba;     :
         :

MAHMOAD ABDAH AHMED, a.k.a., MAHMOOD     :
ABDO AHMED BIN AHMED,     :
     as Next Friend of MAHMOAD ABDAH;     :
         :

MAJID MAHMOUD AHMED, a.k.a.,     :
MAJED MOHMOOD, a.k.a.,     :
MAJID M. ABDU AHMED,     :
     Detainee, Camp Delta,     :
     Guantánamo Bay Naval Station,     :
     Guantánamo Bay, Cuba;     :
         :

MAHMOUD AHMED,     :
     as Next Friend of MAJID ABDAH AHMED;     :
         :

ABDULMALIK ABDULWAHHAB AL-RAHABI,     :
     Detainee, Camp Delta,     :
     Guantánamo Bay Naval Station,     :
     Guantánamo Bay, Cuba;     :
         :

AHMED ABDULWAHHAB,     :
     as Next Friend of ABDULMALIK     :
     ABDULWAHHAB AL-RAHABI;     :
         :

MAKHTAR YAHIA NAJI AL-WRAFIE,     :
     Detainee, Camp Delta,     :
     Guantánamo Bay Naval Station,     :
     Guantánamo Bay, Cuba;     :
         :

FOADE YAHIA NAJI AL-WRAFIE,     :
     as Next Friend of MAKHTAR YAHIA NAJI     :
     AL-WRAFIE;     :
         :
         :

(continued on next page)     :
         :
         :

PETITION FOR WRIT
OF HABEAS CORPUS

No. _____

AREF ABD IL RHEEM,                                    :
    Detainee, Camp Delta,                            :
    Guantánamo Bay Naval Station,                    :
    Guantánamo Bay, Cuba;                            :
                                      :

AREF ABD AL RAHIM,                                    :
    as Next Friend of AREF ABD IL RHEEM;             :
                                      :

YASEIN KHASEM MOHAMMAD ESMAIL,                        :
    Detainee, Camp Delta,                            :
    Guantánamo Bay Naval Station,                    :
    Guantánamo Bay, Cuba;                            :
                                      :

JAMEL KHASEM MOHAMMAD,                                :
    as Next Friend of YASEIN KHASEM                  :
    MOHAMMAD ESMAIL;                                 :
                                      :

ADNAN FARHAN ABDUL LATIF,                             :
    Detainee, Camp Delta,                            :
    Guantánamo Bay Naval Station,                    :
    Guantánamo Bay, Cuba;                            :
                                      :

MOHAMED FARHAN ABDUL LATIF,                           :
    as Next Friend of ADNAN FARHAN ABDUL             :
    LATIF;                                           :
                                      :

JAMAL MAR'I,                                          :
    Detainee, Camp Delta,                            :
    Guantánamo Bay Naval Station,                    :
    Guantánamo Bay, Cuba;                            :
                                      :

NABIL MOHAMED MAR'I,                                  :
    as Next Friend of JAMAL MAR'I;                   :
                                      :

OTHMAN ABDULRAHEEM MOHAMMAD,                          :
    Detainee, Camp Delta,                            :
    Guantánamo Bay Naval Station,                    :
    Guantánamo Bay, Cuba;                            :
                                      :

ARAF ABDULRAHEEM MOHAMMAD,                            :
    as Next Friend of OTHMAN                         :
    ABDULRAHEEM MOHAMMAD;                            :
                                      :

(continued on next page)                              :
                                      :
                                      :

ADIL SAEED EL HAJ OBAID,
    Detainee, Camp Delta,
    Guantánamo Bay Naval Station,
    Guantánamo Bay, Cuba;

NAZEM SAEED EL HAJ OBAID,
    as Next Friend of ADIL SAEED EL HAJ
    OBAID;

MOHAMED MOHAMED HASSAN ODAINI,
    Detainee, Camp Delta,
    Guantánamo Bay Naval Station,
    Guantánamo Bay, Cuba;

BASHIR MOHAMED HASSAN ODAINI,
    as Next Friend of MOHAMED MOHAMED
    HASSAN ODAINI;

SADEQ MOHAMMED SAID,
    Detainee, Camp Delta,
    Guantánamo Bay Naval Station,
    Guantánamo Bay, Cuba;

ABD ALSALAM MOHAMMED SAEED,
    as Next Friend of SADEQ MOHAMMED
    SAID;

FAROUK ALI AHMED SAIF,
    Detainee, Camp Delta,
    Guantánamo Bay Naval Station,
    Guantánamo Bay, Cuba;

SHEAB AL MOHAMEDI,
    as Next Friend of FAROUK ALI AHMED
    SAIF;

SALMAN YAHALDI HSAN MOHAMMED SAUD,
    Detainee, Camp Delta,
    Guantánamo Bay Naval Station,
    Guantánamo Bay, Cuba;

(continued on next page)

and        :

YAHIVA HSANE MOHAMMED SAUD AL-
RBUAYE,
    as Next Friend of SALMAN YAHALDI
    HSAN MOHAMMED SAUD,

            *Petitioners,*

    v.

GEORGE W. BUSH,
    President of the United States
    The White House
    1600 Pennsylvania Ave., N.W.
    Washington, D.C. 20500

DONALD RUMSFELD,
    Secretary, United States
    Department of Defense
    1000 Defense Pentagon
    Washington, D.C. 20301-1000

ARMY BRIG. GEN. JAY HOOD,
    Commander, Joint Task Force–GTMO
    Guantánamo Bay Naval Station
    Guantánamo Bay, Cuba
    c/o United States Army,
    Army Pentagon
    Washington, D.C. 20310-0200

    and

ARMY COL. NELSON J. CANNON,
    Commander, Camp Delta,
    Guantánamo Bay Naval Station
    Guantánamo Bay, Cuba
    c/o United States Army,
    Army Pentagon
    Washington, D.C. 20310-0200

            *Respondents.*

*All Respondents are sued in their*
*official and personal capacities.*
-------------------------------------------------- X

## PETITION FOR WRIT OF HABEAS CORPUS

1.  Petitioners Mahmoad Abdah, Majid Mahmoud Ahmed, Abdulmalik Abdulwahhab Al-
    Rahabi, Makhtar Yahia Naji Al-Wrafie, Aref Abd Il Rheem, Yasein Khasem Mohammad
    Esmail, Adnan Farhan Abdul Latif, Jamal Mar'i, Othman Abdulraheem Mohammad,
    Adil Saeed el Haj Obaid, Mohamed Mohamed Hassan Odaini, Sadeq Mohammed Said,
    Farouk Ali Ahmed Saif, and Salman Yahaldi Hsan Mohammed Saud (collectively,
    "Petitioners") seek a Writ of Habeas Corpus. All are citizens of Yemen being held,
    virtually *incommunicado* and without access to counsel, in Respondents' unlawful
    custody in Camp Delta, Guantánamo Bay Naval Station, Guantánamo Bay, Cuba
    ("Guantánamo Bay").

2.  Petitioners act on their own behalf and through their Next Friends, all of whom are
    citizens of Yemen: Mahmoad Abdah Ahmed (father of Mahmoad Abdah), Mahmoud
    Ahmed (father of Majid Mahmoud Ahmed), Ahmed Abdulwahhab (father of Abdulmalik
    Abdulwahhab Al-Rahabi), Foade Yahia Naji Al-Wrafie (brother of Makhtar Yahia Naji
    Al-Wrafie), Aref Abd Al Rahim (brother of Aref Abd Il Rheem), Jamel Khasem
    Mohammad (brother of Yasein Khasem Mohammad Esmail), Mohamed Farhan Abdul
    Latif (brother of Adnan Farhan Abdul Latif), Nabil Mohamed Mar'i (brother of Jamal
    Mar'i), Araf Abdulraheem Mohammad (brother of Othman Abdulraheem Mohammad),
    Nazem Saeed el Haj Obaid (brother of Adil Saeed el Haj Obaid), Bashir Mohammed
    Odaini (brother of Mohamed Mohamed Hassan Odaini), Abd Alsalam Mohammed Saeed
    (brother of Sadeq Mohammed Said), Sheab Al Mohamedi (uncle of Farouk Ali Ahmed
    Saif), and Yahiva Hsane Mohammed Saud Al-Rbuaye (father of Salman Yahaldi Hsan
    Mohammed Saud) (collectively, "Next Friends"). *See* Ex. A (Authorization of Mahmoad
    Abdah Ahmed); Ex. B (Authorization of Mahmoud Ahmed); Ex. D (Authorization of
    Ahmed Abdulwahhab); Ex. F (Authorization of Foade Yahia Naji Al-Wrafie); Ex. G
    (Authorization of Aref Abd Al Rahim); Ex. H (Authorization of Jamel Khasem

1

Mohammad); Ex. J (Authorization of Mohamed Farhan Abdul Latif); Ex. L (Authorization of Nabil Mohamed Mar'i); Ex. N (Authorization of Araf Abdulraheem Mohammad); Ex. P (Authorization of Nazem Saeed el Haj Obaid); Ex. R (Authorization of Bashir Mohammed Odaini); Ex. T (Authorization of Abd Alsalam Mohammed Saeed); Ex. U (Authorization of Sheab Al Mohamedi); Ex. W (Authorization of Yahiva Hsane Mohammed Saud Al-Rbuaye).

## I. JURISDICTION

3.    Petitioners bring this action under 28 U.S.C. §§ 2241 and 2242.  This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1651, 2201 and 2202; 5 U.S.C. § 702; the Fifth, Sixth, and Eighth Amendments to the United States Constitution; the International Covenant on Civil and Political Rights; the American Declaration on the Rights and Duties of Man; and customary international law.  Insofar as they seek declaratory relief, Petitioners also rely on Federal Rule of Civil Procedure 57.

4.    This Court has authority under 28 U.S.C. § 2241 to grant the Writ of Habeas Corpus and, under 28 U.S.C. § 2242, to entertain the Petition filed by Mahmoad Abdah Ahmed, Mahmoud Ahmed, Ahmed Abdulwahhab, Foade Yahia Naji Al-Wrafie, Aref Abd Al Rahim, Jamel Khasem Mohammad, Mohamed Farhan Abdul Latif, Nabil Mohamed Mar'i, Araf Abdulraheem Mohammad, Nazem Saeed el Haj Obaid, Bashir Mohammed Odaini, Abd Alsalam Mohammed Saeed, Sheab Al Mohamedi, and Yahiva Hsane Mohammed Saud Al-Rbuaye as Next Friends to Petitioners.

5.    Pursuant to 28 U.S.C. § 2201, this Court is empowered to declare the rights and other legal relations of the parties herein and, under 28 U.S.C. § 2202, to effectuate and enforce declaratory relief by all necessary and proper means, as this case involves an actual controversy within the Court's jurisdiction.

2

## II. VENUE

6.  Venue is proper in the United States District Court for the District of Columbia because at least one Respondent resides in the district, a substantial part of the events or omissions giving rise to the claim occurred in the district, at least one Respondent may be found in the district, and all Respondents are either officers or employees of the United States or an agency thereof acting in their official capacities. *See* 28 U.S.C. §§ 1391(b); 1391(e).

## III. THE PARTIES

### A. Petitioners

7.  Petitioners are presently incarcerated and held in Respondents' unlawful custody at Guantánamo Bay, Cuba.

8.  Because Petitioners have been denied access to legal counsel and to the courts of the United States, family members act as Next Friends for them in these proceedings.

9.  Petitioners and their Next Friends are as follows:

| Petitioner | Next Friend (Relationship) | Exhibits |
|---|---|---|
| Mahmoad Abdah | Mahmoad Abdah Ahmed (Father) | A |
| Majid Mahmoud Ahmed | Mahmoud Ahmed (Father) | B, C |
| Abdulmalik Abdulwahhab Al-Rahabi | Ahmed Abdulwahhab (Father) | D, E |
| Makhtar Yahia Naji Al-Wrafie | Foade Yahia Naji Al-Wrafie (Brother) | F |
| Aref Abd Il Rheem | Aref Abd Al Rahim (Brother) | G |
| Yasein Khasem Mohammad Esmail | Jamel Khasem Mohammad (Brother) | H, I |
| Adnan Farhan Abdul Latif | Mohamed Farhan Abdul Latif (Brother) | J, K |
| Jamal Mar'i | Nabil Mohamed Mar'i (Brother) | L, M |
| Othman Abdulraheem Mohammad | Araf Abdulraheem Mohammad (Brother) | N, O |

| Adil Saeed el Haj Obaid | Nazem Saeed el Haj Obaid (Brother) | P, Q |
|---|---|---|
| Mohamed Mohamed Hassan Odaini | Bashir Mohammed Odaini (Brother) | R, S |
| Sadeq Mohammed Said | Abd Alsalam Mohammed Saeed (Brother) | T |
| Farouk Ali Ahmed Saif | Sheab Al Mohamedi (Uncle) | U, V |
| Salman Yahaldi Hsan Mohammed Saud | Yahiva Hsane Mohammed Saud Al-Rbuaye (Father) | W |

## B. Respondents

10.     Respondent George W. Bush is the President of the United States and Commander in Chief of the United States military. It is pursuant to the November 13, 2001 Military Order promulgated by Respondent Bush, *see* ¶¶ 54–61 *infra*, or alternatively under his authority as Commander in Chief and under the laws and usages of war, that Petitioners are being detained. Accordingly, Respondent Bush is ultimately responsible for Petitioners' unlawful detention.

11.     Respondent Donald Rumsfeld is the Secretary of the United States Department of Defense. Pursuant to either the November 13, 2001 Military Order or the President's authority as Commander in Chief and under the laws and usages of war, Respondent Rumsfeld has been charged with maintaining the custody and control of Petitioners.

12.     Respondent Army Brig. Gen. Jay Hood is the Commander of Joint Task Force–GTMO, the task force running the detention operation at Guantánamo. He has supervisory responsibility for Petitioners.

13.     Respondent Army Col. Nelson J. Cannon is the Commander of Camp Delta, the United States facility where Petitioners are presently held. He is the immediate custodian responsible for Petitioners' detention.

## IV. STATEMENT OF FACTS

### A. Petitioners' Detention

14. Petitioners seek to enforce their right to a judicial determination of whether there is a factual basis for Respondent's determination that they are "enemy combatants."

15. Petitioners are not and have never been enemy aliens, lawful or unlawful belligerents, or combatants of any kind. They are not and have never been "enemy combatants." They are not "part of or supporting forces hostile to the United States or coalition partners in Afghanistan and who engaged in an armed conflict against the United States there." *Hamdi v. Rumsfeld*, 124 S. Ct. 2633, 2639 (2004).

16. Aside from an unsupported assertion that all detainees at Guantánamo Bay are enemy combatants, Respondents have advanced no justification for the arrest, transportation and continued incarceration of Petitioners.

17. Respondents have produced no evidence linking Petitioners to al Qaeda or any other organization or persons involved in either the terrorist attacks on September 11, 2001, or any other terrorist attack on the United States or its citizens.

18. Respondents have produced no evidence that Petitioners were members of the Taliban armed forces or that they were involved in armed conflict by the Taliban against the United States.

19. The limited information available indicates that Petitioners traveled to Pakistan for reasons unrelated to any activities of al Qaeda or the Taliban and that they were not members of either organization. On information and belief, Petitioners traveled to Pakistan for educational, business or missionary reasons, and remained there for those purposes until they were arrested by Pakistani police as part of a dragnet seizure of Yemeni citizens.

20. Respondents have produced no information concerning the circumstances of the seizure of Petitioners. The limited information available indicates that some or all of Petitioners

were seized by Pakistani police in Pakistan in 2001 or 2002. On information and belief, some of Petitioners were initially seized by bounty hunters seeking significant cash rewards that had been promised by the United States military.

21. Counsel for Petitioners does not know whether the Pakistani police provided Respondents with any information that might justify the classification of Petitioners as "enemy combatants." Such information is known by Respondents, who have refused to disclose any information concerning the circumstances of Petitioners' arrest, transfer, transportation or detention.

## B. Petitioner Yasein Khasem Mohammad Esmail

22. Petitioner Yasein Khasem Mohammad Esmail ("Esmail") is approximately twenty-two years old. *See* Ex. I (Affidavit of Jamel Khasem Mohammad) at 1. Around September 2000, he traveled to Pakistan to further his learning in the Arabic language and prepare for university studies. *Id.* at 3. He intended to engage in missionary work in Afghanistan—teaching Arabic and the Koran—after his studies were concluded in Pakistan. *Id.*

23. Esmail's family learned from an International Committee of the Red Cross ("Red Cross") letter that he was being detained in Guantánamo Bay. *Id.* Esmail has written to his family, asking them to contact Yemeni embassy officials for him, inform the them of his plight, and ask them to demand his freedom. *Id.* at 4. His family has received no communications from Esmail for nine months.

24. His older brother fears that Esmail may have been one of the men "sold" to American military officers—i.e., that someone purposefully misidentified Esmail as a Taliban soldier in order to collect a cash bounty from the United States. *Id.*

6

## C. Petitioner Abdulmalik Abdulwahhab Al-Rahabi

25.     Petitioner Abdulmalik Abdulwahhab Al-Rahabi ("Al-Rahabi") is twenty-two years old, married and the father of a four-year old daughter. *See* Ex. E (Affidavit of Ahmed Abdulwahhab) at ¶¶ 2–3.

26.     Around September 2000, Al-Rahabi traveled with his wife to Pakistan in order to study the Koran. *Id.* at ¶¶ 5–6. Their daughter was born while they were together in Pakistan. *Id.* at ¶ 6.

27.     In November 2001, his wife returned to Yemen. *Id.* at ¶ 7. Al-Rahabi intended to return as well, but he was arrested while in Pakistan. *Id.* His family learned from newspaper accounts that he was being detained in Guantánamo Bay. *Id.* at ¶ 7.

28.     The family has received very limited correspondence from Al-Rahabi and heard nothing from him for a nine-month period before receiving a pair of censored, months-old letters. *Id.* at ¶ 8.

## D. Petitioner Majid Mahmoud Ahmed

29.     Petitioner Majid Mahmoud Ahmed ("Ahmed") is twenty-four years old. *See* Ex. C (Affidavit of Mahmoud Ahmed) at ¶ 2. He traveled to Pakistan to continue his studies after finishing school in Yemen. *Id.* at ¶¶ 2–3.

30.     Sometime after September 11, 2001, Ahmed informed his family that he planned to return to Yemen. *Id.* at ¶ 4.

31.     Only after receiving a letter from the Red Cross did Ahmed's family learn that he was being held in Guantánamo Bay. *Id.* at ¶ 5. They have since received five or six letters from him, but nothing since August 2003. *Id.* at ¶ 6.

## E. Petitioner Adnan Farhan Abdul Latif

32.    Petitioner Adnan Farhan Abdul Latif ("Latif") is twenty-six years old, with a history of medical problems stemming from his service as a volunteer in the Yemeni army. *See* Ex. K (Declaration by Mohamed Farhan Abdul Latif) at 1, ¶¶ 2–5.  He was badly injured in an accident in 1994 that left him with a fractured skull, loss of sight in one eye and loss of hearing in one ear. *Id.* at ¶ 3.

33.    Latif left Yemen for Jordan in 1994, seeking medical treatment. *Id.* at ¶ 4.  He returned to Yemen, but left again in 2001 for further treatment. *Id.* at ¶ 5.  The last his family heard from him before his incarceration at Guantánamo Bay, Latif was receiving medical treatment in Karachi, Pakistan. *Id.* at ¶ 8.

34.    Latif's family was apprized of his detention at Guantánamo Bay by a letter from him, dated February 2003 and delivered by the Red Cross. *Id.* at ¶ 5.  The family has received five or six more letters—the last in December 2003—in which Latif describes Guantánamo Bay as "my island of hell." *Id.* at ¶¶ 6–7.

35.    Latif's family has no knowledge of his every having been to Afghanistan and they know of no reason why he is being detained at Guantánamo Bay. *Id.* at ¶ 9.

## F. Petitioner Jamal Mar'i

36.    Petitioner Jamal Mar'i ("Mar'i") is thirty-four years old and married with four children. *See* Ex. M (Affidavit of Nabil Mohamed Mar'i) at 1.  He left Yemen for Karachi, Pakistan to study and find better paying work to support his family, whom he intended eventually to bring over to Pakistan. *Id.*  Mar'i was considering the establishment of an export business in Karachi. *Id.*

37.    A friend of the family informed Mar'i's brother that Mar'i had been arrested in Karachi by United States officials. *Id.* at 2.  Several weeks later the Red Cross telephoned the family to say that Mar'i was being detained in Jordan; a letter from Mar'i to his family

was also delivered via the Red Cross. *Id.* In that note and several more like it, Mar'i indicated that he did not know why he had been arrested. *Id.*

38.    In April 2002, the family received another letter from Mar'i via the Red Cross, this time indicating that Mar'i was being detained in Guantánamo Bay. *Id.* No messages have been received since November 2003. *Id.*

39.    On the family's information and belief, Mar'i is not a member of Al Qaeda and was never a member of the Taliban government armed forces. *Id.* at 3.

### G. Petitioner Othman Abdulraheem Mohammad

40.    Petitioner Othman Abdulraheem Mohammad ("Mohammad") is approximately twenty-three years old. *See* Ex. O (Affidavit of Araf Abdulraheem Mohammad) at 1. He traveled to Pakistan in July 1999 to teach the Koran. *Id.* He called his family in Yemen often, but the calls ceased in October 2001.

41.    Mohammad's family learned through the police in Yemen that Mohammad was being detained at Guantánamo Bay. *Id.* The family has received several letters from Mohammad via the Red Cross. *Id.*

42.    In a letter dated August 2003, Mohammad described his arrest: He was trying to escape Afghanistan when the war began but was not allowed to leave the country; he sought refuge from a tribe between Pakistan and Afghanistan, but when his money was gone he was turned over to the United States military. *Id.* at 2.

### H. Petitioner Adil Saeed El Haj Obaid

43.    Petitioner Adil Saeed El Haj Obaid ("Obaid") is approximately thirty-one years old. *See* Ex. Q (Affidavit of Nazem Saeed el Haj Obaid) at 1. In July 2001, he traveled to Pakistan to engage in Islamic studies. *Id.*

9

44.    Obaid's family learned through the newspaper that he was being detained in Guantánamo
       Bay. *Id.* The family received about ten censored letters from him, with the last dated
       June 21, 2003.

### I. Petitioner Mohamed Mohamed Hassan Odaini

45.    Petitioner Mohamed Mohamed Hassan Odaini ("Odaini") is twenty-one years old. *See*
       Ex. S (Affidavit of Bashir Mohammed Odaini) at 1. He left Yemen in 2000 to study
       Islamic law in Pakistan. *Id.* at 2. He called his mother from Pakistan and told her that he
       was studying and working to support himself. *Id.*

46.    Odaini's family lost touch with him in mid-2002; it was not until the end of 2002 that
       Odaini's family learned from a Red Cross letter that he had been incarcerated in
       Guantánamo Bay. *Id.* Since then, Odaini has written to his family four times, asking
       them to pray for him and to explain that he had gone to Pakistan for study, "not to do
       anything wrong." *Id.*

### J. Petitioner Farouk Ali Ahmed Saif

47.    Petitioner Farouk Ali Ahmed Saif ("Saif") is twenty-four years old. He left Yemen for
       Pakistan in 2001 to pursue an advanced degree in Islamic Studies at the University of
       Karachi. *See* Ex. V (Declaration of Sheab Al Mohamedi) at ¶ 5. His intention was to
       return to his family in Yemen and teach Islam to the Yemeni people.

48.    Saif wrote his older brother a month after he arrived to tell him that he was well on his
       way to being accepted into the university program. *Id.* at ¶ 6. The family did not hear
       from him again until about eighteen months later when they received a short note,
       delivered through the Red Cross, telling them he was being detained in Guantánamo Bay.
       *Id.* at ¶ 7. His family received a total of seven letters from Saif, each professing his

innocence and urging his family not to worry. *Id.* at ¶ 8. The last letter was received in November 2003. *Id.*

49.     On the information and belief of his family, Saif has never been a member of Al Qaeda or the Taliban government forces. *Id.* His family has no idea why he was arrested or why he is being held, nor do they have any knowledge of any charges against him. *Id.* at ¶ 13.

### K. Petitioners Mahmoad Abdah, Makhtar Yahia Naji Al-Wrafie, Aref Abd Il Rheem, Petitioner Sadeq Mohammed Said, and Salman Yahaldi Hsan Mohammed Saud

50.     To date, neither the United States government nor the government of Yemen have provided any information regarding the circumstances surrounding the arrest and detention of Petitioners Mahmoad Abdah, Makhtar Yahia Naji Al-Wrafie, Aref Abd Il Rheem, Sadeq Mohammed Said, or Salman Yahaldi Hsan Mohammed Saud.

51.     On information and belief, these Petitioners are incarcerated and held in Respondents' unlawful custody at Guantànamo. *See* Ex. A (Authorization of Mahmoad Abdah Ahmed); Ex. F (Authorization of Foade Yahia Naji Al-Wrafie); Ex. G (Authorization of Aref Abd Al Rahim); Ex. T (Authorization of Abd Alsalam Mohammed Saeed); Ex. W (Authorization of Yahiva Hsane Mohammed Saud Al-Rbuaye).

### L. The Joint Resolution

52.     In the wake of the September 11, 2001 attacks, the United States, at the direction of Respondent Bush, began a massive military campaign against the Taliban government, then in power in Afghanistan. On September 18, 2001, a Joint Resolution of Congress authorized the President to use force against the "nations, organizations, or persons" that "planned, authorized, committed, or aided the terrorist attacks on September 11, 2001, or [that] harbored such organizations or persons." Joint Resolution 23, Authorization for Use of Military Force, Public Law 107-40, 115 Stat. 224 (Jan. 18, 2001).

53.     Neither the Respondents nor any other agents of the United States government have

         produced any information to support any link between Petitioners and organizations or

         persons involved in the terrorist attacks on September 11, 2001, or any other terrorist

         attack attributed by the United States to Al Qaeda or any other international terrorist

         group. The limited information available indicates that the Petitioners were in Pakistan

         for reasons unrelated to the activities of Al Qaeda or the Taliban until they were arrested

         by Pakistani police and transferred to the United States military in 2002.

### M. The Detention Order

54.     On November 13, 2001, Respondent Bush issued a Military Order authorizing indefinite

         detention without due process of law. The Order authorizes Respondent Rumsfeld to

         detain anyone Respondent Bush has "reason to believe":

>    i.     is or was a member of the organization known as al Qaida;
>    ii.    has engaged in, aided or abetted, or conspired to commit, acts of
>           international terrorism, or acts in preparation therefor, that have
>           caused, threaten to cause, or have as their aim to cause, injury to or
>           adverse effects on the United States, its citizens, national security,
>           foreign policy, or economy; or
>    iii.   has knowingly harbored one or more individuals described in
>           subparagraphs (i) and (ii).

*See* Military Order of November 13, 2001.

55.     Respondent Bush must make this determination in writing. The Order was neither

         authorized nor directed by Congress, and is beyond the scope of the Joint Resolution of

         September 18, 2001.

56.     The Military Order vests the President with complete discretion to identify the

         individuals that fall within its scope. It establishes no standards governing the use of his

         discretion. Once a person has been detained, the Order contains no provision for the

         person to be notified of the charges he may face. Instead, the Order authorizes detainees

         to be held without charges. It contains no provision for detainees to be notified of their

rights under domestic and international law, and provides neither the right to counsel nor the right to consular access. It provides no right to appear before a neutral tribunal to review the legality of a detainee's continued detention and no provision for appeal to an Article III or any other court. In fact, the Order expressly bars any form of judicial review. The Order authorizes indefinite and unreviewable detention, based on nothing more than the President's written determination that an individual is subject to its terms.

57.     The Military Order authorizes the use of military commissions to try noncitizens accused of terrorism and other war crimes. It establishes no guarantee that charges will be promptly brought, that these charges will be made known to the accused and his counsel, or that a speedy trial providing adequate legal process will be afforded to determine guilt on such charges or their legal validity under domestic or international law. It permits prolonged pre-commission detention in solitary confinement, risking such long-term psychological injury as that suffered by Petitioners.

58.     Petitioners are not properly subject to the Military Order.

59.     The Military Order was promulgated in the United States and in this judicial district, the decision to detain and designate Petitioners was made by Respondents in the United States and in this judicial district, the decision to detain Petitioners at Guantánamo was made in the United States and in this judicial district, and the decision to continue detaining Petitioners was, and is, being made by Respondents in the United States and in this judicial district.

60.     In the related case of *Rasul v. Bush*, 215 F. Supp. 2d 55 (D.D.C. 2002), Respondents contended that the petitioners in that case were being detained not pursuant to the President's Military Order but rather under the President's authority as Commander in Chief and under the laws and usages of war. However, on information and belief, Petitioners in this matter were not arrested or detained by the United States in the course of the armed conflict.

13

61.     Moreover, Petitioners appear to have been detained in Pakistan not by United States
        authorities but by Pakistani police or, in the first instance, by bounty hunters seeking to
        recover a cash reward from the United States military. Petitioners were seized far from
        the battlefield. Accordingly, Petitioners are not properly detained under the President's
        authority as Commander in Chief or under the laws and usages of war.

### N.  Guantánamo Bay Naval Station

62.     On or about January 11, 2002, the United States military began transporting prisoners
        captured in Afghanistan to Camp X-Ray, at the United States Naval Base, in Guantánamo
        Bay, Cuba. In April 2002, all prisoners were transferred to a more permanent prison
        facility in Guantánamo, Camp Delta. Offenses committed by both civilians and foreign
        nationals living on Guantánamo are brought before federal courts on the mainland, where
        respondents enjoy the full panoply of Constitutional rights. Detainees incarcerated at
        Guantánamo are entitled to test the legality of their detention in the federal courts. *Rasul
        v. Bush*, 124 S. Ct. 2686, 2698 (2004).

### O.  Conditions of Detention at Guantánamo

63.     Since gaining control of Petitioners, the United States military has held them virtually
        *incommunicado*. On information and belief, they have been or will be interrogated
        repeatedly by agents of the United States Departments of Defense and Justice, though
        they have not been charged with an offense or notified of any pending or contemplated
        charges. They have made no appearance before either a military or civilian tribunal of
        any sort and have not been provided counsel or the means to contact counsel. They have
        not been informed of their rights under the United States Constitution, the regulations of
        the United States Military, the Geneva Convention, the International Covenant on Civil
        and Political Rights, the American Declaration on the Rights and Duties of Man, or
        customary international law. Respondents have taken the position that Petitioners should

14

not be told of these rights. As a result, Petitioners are completely unable either to protect or to vindicate their rights under domestic and international law.

64.     On information and belief, Petitioners have been forced to provide involuntary statements to Respondents' agents at Guantánamo. Petitioners have been held under conditions that violate their international and constitutional rights to dignity and freedom from cruel, unusual and degrading treatment or punishment. They have been housed throughout their detention in accommodations that fail to satisfy either domestic or internationally accepted standards for any person subject to detention. They have been refused meaningful access to their families. They have not been provided with the opportunity fully to exercise their religious beliefs and they have been humiliated in the exercise of their religion.

65.     In published statements, Respondents Bush and Rumsfeld, as well as Brigadier General Michael R. Lehnert and Colonel Terry L. Carrico (who preceded Respondents Hood and Cannon in their respective positions), have indicated that the United States may hold Petitioners under these conditions indefinitely. *See, e.g.*, Roland Watson, The Times (London), Jan. 18, 2002 ("Donald Rumsfeld, the United States Defense Secretary, suggested last night that al-Qaeda prisoners could be held indefinitely at the base. He said that the detention of some would be open-ended as the United States tried to build a case against them.").

66.     According to the Department of Defense, detainees who are adjudged innocent of all charges by a military commission may nevertheless be kept in detention at Guantánamo Bay indefinitely. *See* Department of Defense Press Background Briefing of July 3, 2003, available at http://www.defenselink.mil/transcripts/2003/tr20030703-0323.html (last visited on July 25, 2004).

### P. Combatant Status Review Tribunal

67.     On July 7, 2004, Deputy Secretary of Defense Paul Wolfowitz signed an Order directing the Secretary of the Navy to establish a Combatant Status Review Tribunal ("CSR

15

Tribunal") to be convened at Guantánamo Bay. *See* Memorandum for the Secretary of the Navy, July 7, 2004 ("Memorandum").   The ostensible purpose of the CSR Tribunal is to determine on a case-by-case basis whether a detainee is "properly detained as an enemy combatant," *id.* at ¶ g.12, notwithstanding Deputy Secretary Wolfowitz's assertion that each detainee has already "been determined to be an enemy combatant through multiple levels of review by officers of the Department of Defense," *id.* at ¶ a.

68.   The first panels of the CSR Tribunal are expected to be convened imminently. *See* "United States Military to Review Detainees' Cases," NY Times, July 25, 2004, available at http://www.nytimes.com/aponline/national/AP-Guantanamo-Review-Tribunals.html (last visited July 25, 2004) (quoting Navy Commander Beci Brenton's statement of July 23, 2004, that "[t]he aim is to conduct the first tribunal next week").

69.   The procedures ordered by Deputy Secretary Wolfowitz for the CSR Tribunal are plainly deficient, failing to provide due process protection for the detainees as a whole and for Petitioners in particular.  For instance, notice of the factual basis for a detainee's designation as an "enemy combatant" will be provided only if the factual basis is unclassified, Memorandum at ¶ g.1; the panels will not be bound by the rules of evidence applicable in a court of law, *id.* at ¶ 9; "enemy combatant" status is to be determined only under a preponderance-of-the-evidence standard, with a rebuttable presumption in favor of the government's evidence, *id.* at ¶ g.12.  In addition, no provision has been made for the presence of any of the detainees' counsel at the CSR Tribunal hearings, in apparent violation of the Model Rules of Professional Conduct, Rule 4.2 ("In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.").  Instead, the detainees are to be offered the assistance of a non-lawyer "Personal Representative," *id.* at ¶ c, whose conversations with individual detainees will, on information and belief, be monitored by the United States military.

## V. CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
**(Unlawful Detention)**

70. Petitioners and Next Friends incorporate paragraphs 1–69 by reference.

71. Petitioners are not, nor have they ever been, enemy aliens, lawful or unlawful belligerents, or combatants of any kind. Petitioners are not, nor have they ever been, "enemy combatants." They were not "part of or supporting forces hostile to the United States or coalition partners in Afghanistan and who were engaged in an armed conflict against the United States there." *Hamdi v. Rumsfeld*, 124 S. Ct. 2633, 2639 (2004). Petitioners have committed no violation of domestic, foreign, or international law. There is no basis whatsoever in law for Petitioners' detention.

### SECOND CLAIM FOR RELIEF
**(Due Process—Fifth Amendment to the United States Constitution)**

72. Petitioners and Next Friends incorporate paragraphs 1–71 by reference.

73. By the actions described above, Respondents, acting under color of law, have violated and continue to violate the Fifth Amendment to the United States Constitution. Respondent Bush has ordered the prolonged, indefinite and arbitrary detention of individuals without Due Process of Law. Respondents Rumsfeld, Hood and Cannon are likewise acting in violation of the Fifth Amendment since they act at the President's direction. On its face, the Executive Order violates the Fifth Amendment.

### THIRD CLAIM FOR RELIEF
**(Due Process—Fifth Amendment to the United States Constitution)**

74. Petitioners and Next Friends incorporate paragraphs 1–73 by reference.

75. By the actions described above, Respondents, acting under color of law, have violated and continue to violate the right of Petitioners to be free from arbitrary, prolonged and indefinite detention, in violation of the Due Process Clause of the Fifth Amendment to the United States Constitution. The Executive Order, as applied to Petitioners, violates the Fifth Amendment.

17

### FOURTH CLAIM FOR RELIEF
### (Due Process—International Law)

76.    Petitioners and Next Friends incorporate paragraphs 1–75 by reference.

77.    By the actions described above, Respondents, acting under color of law, have violated

and continue to violate customary international law, the Third and Fourth Geneva

Conventions, Articles 9 and 14 of the International Covenant on Civil and Political

Rights, and Articles XXVIII, XXV and XXVI of the American Declaration on the Rights

and Duties of Man.  Respondent Bush has ordered the prolonged, indefinite and arbitrary

detention of Petitioners, without legal process, in violation of binding obligations of the

United States under international law.  Respondents Rumsfeld, Hood and Cannon are

likewise acting in violation of international law, since they act at the President's

direction.  On its face, the Executive Order violates international law.

### FIFTH CLAIM FOR RELIEF
### (Due Process—International Law)

78.    Petitioners and Next Friends incorporate paragraphs 1–77 by reference.

79.    By the actions described above, Respondents, acting under color of law, have violated

and continue to violate the right of Petitioners to be free from arbitrary, prolonged and

indefinite detention, in violation of customary international law, the Third and Fourth

Geneva Conventions, Articles 9 and 14 of the International Covenant on Civil and

Political Rights, and Articles XXVIII, XXV and XXVI of the American Declaration on

the Rights and Duties of Man. The Executive Order, as applied to Petitioners, violates

these and other binding obligations of the United States under international law.

### SIXTH CLAIM FOR RELIEF
### (Due Process—Failure to Comply with United States
### Military Regulations and International Humanitarian Law)

80.    Petitioners and Next Friends incorporate paragraphs 1–79 by reference.

81.    By the actions described above, Respondents, acting under color of law, have violated

and continue to violate the rights accorded to persons seized by the United States Military

18

in times of armed conflict, as established by, *inter alia*, the regulations of the United States Military, Articles 4 and 5 of the Third Geneva Convention, the Fourth Geneva Convention and customary international law.

## SEVENTH CLAIM FOR RELIEF
### (War Powers Clause)

82.  Petitioners and Next Friends incorporate paragraphs 1–81 by reference.

83.  By the actions described above, Respondents, acting under color of law, have exceeded the constitutional authority of the Executive and have violated and continue to violate the War Powers Clause by ordering the prolonged and indefinite detention of Petitioners without congressional authorization.

## EIGHTH CLAIM FOR RELIEF
### (Suspension of the Writ)

84.  Petitioners and Next Friends incorporate paragraphs 1–83 by reference.

85.  To the extent the Executive Order of November 13, 2001, disallows any challenge to the legality of Petitioners' detention by way of habeas corpus, the Order and its enforcement constitute an unlawful Suspension of the Writ, in violation of Article I of the United States Constitution. The actions of the Respondents in claiming the legal right to detain Petitioners without judicial authorization or review constitute a suspension of the Writ of Habeas Corpus in violation of Article I of the United States Constitution.

## NINTH CLAIM FOR RELIEF
### (Arbitrary and Unlawful Detention—Violation of the Administrative Procedures Act)

86.  Petitioners and Next Friends incorporate paragraphs 1–85 by reference.

87.  By detaining Petitioners for the duration and in the manner described herein, Respondents have arbitrarily, unlawfully and unconstitutionally detained Petitioners in violation of the Administrative Procedures Act, 5 U.S.C. § 706(2).

## PRAYER FOR RELIEF

**WHEREFORE**, Petitioners and Next Friends pray for relief as follows:

1. Grant Mahmoad Abdah Ahmed status as Next Friend of Petitioner Mahmoad Abdah;

2. Grant Mahmoud Ahmed status as Next Friend of Majid Mahmoud Ahmed;

3. Grant Ahmed Abdulwahhab status as Next Friend of Abdulmalik Abdulwahhab Al-Rahabi;

4. Grant Foade Yahia Naji Al-Wrafie status as Next Friend of Makhtar Yahia Naji Al-Wrafie;

5. Grant Aref Abd Al Rahim status as Next Friend of Aref Abd Il Rheem;

6. Grant Jamel Khasem Mohammad status as Next Friend of Yasein Khasem Mohammad Esmail;

7. Grant Mohamed Farhan Abdul Latif status as Next Friend of Adnan Farhan Abdul Latif;

8. Grant Nabil Mohamed Mar'i status as Next Friend of Jamal Mar'i;

9. Grant Araf Abdulraheem Mohammad status as Next Friend of Othman Abdulraheem Mohammad;

10. Grant Nazem Saeed el Haj Obaid status as Next Friend of Adil Saeed el Haj Obaid;

11. Grant Bashir Mohammed Odaini status as Next Friend of Mohamed Mohamed Hassan Odaini;

12. Grant Abd Alsalam Mohammed Saeed status as Next Friend of Sadeq Mohammed Said;

13. Grant Sheab Al Mohamedi status as Next Friend of Farouk Ali Ahmed Saif;

14. Grant Yahiva Hsane Mohammed Saud Al-Rbuaye status as Next Friend of Salman Yahaldi Hsan Mohammed Saud;

15. Order and declare the Executive Order of November 13, 2001, unlawful as a violation of the Fifth Amendment to the United States Constitution; the War Powers Clause of Article I of the United States Constitution; the Administrative Procedures Act, 5 U.S.C. § 702;

customary international law; the International Covenant on Civil and Political Rights; and the American Declaration on the Rights and Duties of Man;

16. Order and declare that Petitioners' indefinite detention is in violation of the Fifth Amendment to the United States Constitution; customary international law; the International Covenant on Civil and Political Rights; the American Declaration on the Rights and Duties of Man; the regulations of the United States Military; the Geneva Conventions; and international humanitarian law;

17. Order and declare the Combatant Status Review Tribunal, as currently constituted and designed, is in violation of the Fifth Amendment to the United States Constitution; the International Covenant on Civil and Political Rights; the American Declaration on the Rights and Duties of Man; the regulations of the United States Military; the Geneva Conventions; and international humanitarian law;

18. Order and declare that Petitioners are subject to the protections of the Geneva Conventions and international humanitarian law;

19. Order and declare that the provision of the Executive Order of November 13, 2001, that bars Petitioners from seeking relief in this Court is an unlawful Suspension of the Writ, in violation of Article I of the United States Constitution;

20. Order immediate, private and unmonitored access by counsel to Petitioners;

21. Order immediate cessation of direct or indirect interrogation of Petitioners while the instant litigation is pending;

22. Order immediate preservation of all evidence of torture or other abusive interrogation techniques or treatment by any individual acting for or on behalf of the United States military, the United States, or any agency thereof;

23. Order a stay of any proceedings against Petitioners before the Combat Status Review Tribunal, pending a determination of the process to which Petitioners are constitutionally entitled;

24.     Order any proceedings before the Combat Status Review Tribunal to proceed only in the

presence of counsel for Petitioners;

25.     Order Petitioners' immediate release from their unlawful custody if Respondents refuse

to comply with the terms of relief sought in paragraphs 20 through 24, *supra*;

26.     To the extent Respondents contest any material factual allegations in this Petition,

schedule an evidentiary hearing at which Petitioners may adduce proof in support of their

allegations; and

27.     Grant such other legal or equitable relief as the Court deems necessary and appropriate to

protect Petitioners' rights under the United States Constitution and international law.

Dated: Washington, D.C.
       July 27, 2004

                                        Respectfully submitted,

                                        COVINGTON & BURLING

                              By:       *David H. Remes*
                                        David H. Remes
                                        D.C. Bar No. 370782
                                        1201 Pennsylvania Avenue, N.W.
                                        Washington, D.C. 20004-2401
                                        Tel: (202) 662-5212
                                        Fax: (202) 778-5212

                                        Marc D. Falkoff, *pro hac vice* to be filed
                                        1330 Avenue of the Americas
                                        New York, NY 10019
                                        Tel: (212) 841-1166
                                        Fax: (646) 441-9166

                                        *Lead Counsel for Petitioners*

CENTER FOR CONSTITUTIONAL RIGHTS
Michael Ratner
Barbara Olshansky
Steven Macpherson Watt
666 Broadway, 7th Floor
New York, NY 10012
Tel:  (212) 243-3805
*Of Counsel for Petitioners*

## VERIFICATION

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed on this 27th day of July 2004.

David H. Remes

David H. Remes

## CERTIFICATE OF SERVICE

I hereby certify that I have caused a copy of the foregoing Petition for Writ of

Habeas Corpus and a Local Rule 405 Related-Case Notification to be served this 27th day of

July 2004, by registered mail on:

> The Honorable John D. Ashcroft
> Attorney General of the United States
> United States Department of Justice
> 950 Pennsylvania Avenue, N.W.
> Washington, D.C.  20530;

> The Honorable Donald Rumsfeld,
> Secretary, United States
> Department of Defense
> 1000 Defense Pentagon
> Washington, D.C.  20301-1000;

> Army Brigadier General Jay Hood
> Commander, Joint Task Force–GTMO
> Guantanamo Bay Naval Station
> Guantanamo Bay, Cuba; and

> Army Colonel Nelson J. Cannon
> Commander, Camp Delta
> Guantanamo Bay Naval Station
> Guantanamo Bay, Cuba.

I further certify that I have caused a copy of the foregoing Petition for Writ of

Habeas Corpus and a Local Rule 405 Related-Case Notification to be served this same day by

hand on:

> The Honorable Kenneth L. Wainstein
> Interim United States Attorney for the District of Columbia
> Judiciary Center
> 555 4th Street, N.W.
> Washington, D.C.  20530.

David H. Remes
Covington & Burling
1201 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2401