IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SHAFIQ RASUL, *et al.* | ) | |
| | ) | |
| Petitioners, | ) | |
| | ) | |
| v. | ) | Civil Action No. 02-CV-0299 (CKK) |
| | ) | |
| GEORGE WALKER BUSH, President of the United States, *et al.,* | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |
| FAWZI KHALID ABDULLAH FAHAD AL ODAH, *et al.* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 02-CV-0828 (CKK) |
| | ) | |
| UNITED STATES OF AMERICA, *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| MAMDOUH HABIB, *et al.* | ) | |
| | ) | |
| Petitioners, | ) | |
| | ) | |
| v. | ) | Civil Action No. 02-CV-1130 (CKK) |
| | ) | |
| GEORGE WALKER BUSH, President of the United States, *et al.,* | ) | |
| | ) | |
| Respondents. | ) | |

MURAT KURNAZ, *et al.*                )
                                      )
          Petitioners,                )
                                      )
     v.                               )     Civil Action No. 04-CV-1135 (ESH)
                                      )
GEORGE W. BUSH,                       )
     President of the United States,  )
     *et al.,*                        )
                                      )
          Respondents.                )
                                      )

OMAR KHADR, *et al.*                  )
                                      )
          Petitioners,                )
                                      )
     v.                               )     Civil Action No. 04-CV-1136 (JDB)
                                      )
GEORGE W. BUSH,                       )
     President of the United States,  )
     *et al.,*                        )
                                      )
          Respondents.                )
                                      )

MOAZZAM BEGG, *et al.*                )
                                      )
          Petitioners,                )
                                      )
     v.                               )     Civil Action No. 04-CV-1137 (RMC)
                                      )
GEORGE W. BUSH,                       )
     President of the United States,  )
     *et al.,*                        )
                                      )
          Respondents.                )

| | |
|---|---|
| MOURAD BENCHELLALI, *et al.* ) | |
| ) | |
| Petitioners, ) | |
| ) | |
| v. ) | Civil Action No. 04-CV-1142 (RJL) |
| ) | |
| GEORGE W. BUSH, ) | |
| President of the United States, ) | |
| *et al.,* ) | |
| ) | |
| Respondents. ) | |

| | |
|---|---|
| JAMIL EL-BANNA, *et al.* ) | |
| ) | |
| Petitioners, ) | |
| ) | |
| v. ) | Civil Action No. 04-CV-1144 (RWR) |
| ) | |
| GEORGE W. BUSH, ) | |
| President of the United States, ) | |
| *et al.,* ) | |
| ) | |
| Respondents. ) | |

| | |
|---|---|
| FALEN GHEREBI, *et al.* ) | |
| ) | |
| Petitioners, ) | |
| ) | |
| v. ) | Civil Action No. 04-CV-1164 (RBW) |
| ) | |
| GEORGE WALKER BUSH, ) | |
| ) | |
| *et al.,* ) | |
| ) | |
| Respondents. ) | |

|  |  |  |
|---|---|---|
| LAKHDAR BOUMEDIENE, *et al.* | ) | |
| | ) | |
| Petitioners, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-CV-1166 (RJL) |
| | ) | |
| GEORGE WALKER BUSH, | ) | |
| President of the United States, | ) | |
| *et al.,* | ) | |
| | ) | |
| Respondents. | ) | |

|  |  |  |
|---|---|---|
| SUHAIL ABDUL ANAM, *et al.* | ) | |
| | ) | |
| Petitioners, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-CV-1194 (HHK) |
| | ) | |
| GEORGE W. BUSH, | ) | |
| President of the United States, | ) | |
| *et al.,* | ) | |
| | ) | |
| Respondents. | ) | |

|  |  |  |
|---|---|---|
| ISA ALI ABDULLA ALMURBATI, *et al.* | ) | |
| | ) | |
| Petitioners, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-CV-1227 (RBW) |
| | ) | |
| GEORGE WALKER BUSH, | ) | |
| President of the United States, | ) | |
| *et al.,* | ) | |
| | ) | |
| Respondents. | ) | |

)
MAHMOAD ABDAH, *et al.*                )
                                       )
            Petitioners,               )
                                       )
      v.                               )          Civil Action No. 04-CV-1254 (HHK)
                                       )
GEORGE W. BUSH,                        )
      President of the United States,  )
      *et al.*,                        )
                                       )
            Respondents.               )
_____)

**RESPONDENTS' MOTION FOR JOINT CASE MANAGEMENT CONFERENCE,
ENTRY OF COORDINATION ORDER, AND REQUEST FOR EXPEDITION**

Respondents hereby request a Joint Case Management Conference involving each of the

judges presiding over complaints or petitions for habeas corpus brought on behalf of foreign

nationals detained or taken into custody by United States authorities as enemy combatants in

connection with hostilities involving al Qaeda, the Taliban, and their supporters, and held at the

United States Naval Base at Guantanamo Bay, Cuba.  The requested Joint Case Management

Conference would allow the Court to develop and enter a coordination order to allow for the

orderly and efficient resolution of the many common questions of law presented by these

petitions.  While the petitions have not been consolidated, the Court's inherent authority to

manage its docket permits coordinated consideration of legal issues where judicial economy

would be served, and where – as here – consistent resolution of those legal issues is desirable.

Respondents are presenting this Motion simultaneously to each of the judges to whom a

Guantanamo habeas petition has been assigned.  Given the important concerns that underlie this

Motion, Respondents respectfully request that the Court expedite its consideration.

Although proceedings on all of these petitions are at their inception, and despite the fact

that each petition alleges some facts unique to individual detainees, it is already clear that the

cases present a number of important common questions of law.  The common questions include

threshold issues whose resolution will determine the fundamental character of the proceedings

that follow, including: (1) whether, under the U.S. Constitution, the detainees have a right to

consult with Petitioners and their counsel for purposes of prosecuting these habeas petitions, and

for other purposes; (2) whether the Constitution, and other applicable legal principles, permit

Respondents to place conditions on such attorney-detainee consultations, including whether

Respondents may require certain attorney-detainee consultations to be monitored for national

security purposes;[1] (3) whether the detainees, who were not captured in the United States or its

territories and are not detained there, are protected by the Due Process Clause of the Fifth

Amendment, and by other provisions of the Constitution; (4) whether the detainees may

challenge their detention under various treaties and conventions to which the United States is

signatory, and under principles of "customary international law"; (5) whether these habeas

proceedings must be deferred pending completion of the Combatant Status Review Tribunal

("CSRT") process that the Department of Defense has recently formalized to reach fresh

determinations on the status of the detainees, most particularly whether their circumstances of

---

[1] This issue is presently under consideration by Judge Kollar-Kotelly.  *See Response to Complaint in Accordance with Court's Order of July 25, 2004* filed in *Al Odah v. United States*, No. 02-CV-828 (July 30, 2004).

capture and other factors qualify them as "enemy combatants";[2] and (6) whether and to what extent the status determinations reached in the CSRT process merit deference in this Court's consideration of the habeas petitions.  In addition, there are common procedural questions to be addressed in these cases, including appropriate procedures for handling classified submissions in the cases, the propriety of and limitations on discovery, and procedures for any hearings in those matters.

Respondents previously moved for consolidation of all such petitions before a single judge of this Court pursuant to FED. R. CIV. P. 42.  By order dated July 26, 2004, Judge Kollar-Kotelly (the judge presiding over the lowest-numbered of the Guantanamo Bay cases) declined to exercise her discretion to consolidate, concluding that "the different circumstances of each Petitioner's capture and the individualized reasons offered for that Petitioner's confinement will require individualized adjudication."  (Mem. Op. at 3-4.)  Respondents do not challenge that determination in this Motion, but instead respectfully suggest an alternative procedure.  Even if one assumes that the varying circumstances of the Petitioners' capture may ultimately require individualized attention by the Court, it will promote judicial economy and convenience for the parties to order coordinated briefing, argument, and consideration on the important questions of law and procedure that will shape these habeas proceedings.  Absent such coordinated treatment, all parties will be prejudiced, both by the potential for inconsistent rulings on similar issues pertaining to Guantanamo Bay detainees, as well as by the practical and logistical difficulties

---

[2] In at least three cases, Petitioners have filed motions seeking to temporarily enjoin the implementation of the CSRT process and challenging the conduct of hearings without access to counsel.  *See Gherebi v. Bush*, No. 04-CV-1164; *Boumediene v. Bush*, No. 04-CV-1166; *El-Banna v. Bush*, No. 04-CV-1144.

presented by briefing and arguing the same legal issues before at least eight separate district judges.

Accordingly, Respondents urge that the judges presiding over the above-captioned petitions schedule a Joint Case Management Conference, with all judges present, in order to identify the common questions of law presented by the pending petitions, and to develop a schedule for coordinated pretrial proceedings, including briefing and argument on those questions. A proposed order is attached.

Pursuant to LCvR 7(m), counsel for Respondents have conferred or attempted to confer by telephone and e-mail with counsel for Petitioners in the related cases regarding this motion. Counsel for Petitioners in *Habib*, *El-Banna*, *Gherebi*, *Anam*, *Almurbati*, *Boumediene* and *Begg* have indicated that they oppose or do not consent to the motion. Counsel for Petitioners in *Benchellali* have indicated that they reserve judgment but expect to oppose the motion. Respondents would note that with respect to the previous motion for consolidation, counsel for Petitioners who expressed a position either opposed or did not consent to the motion.

## BACKGROUND

On September 11, 2001, the al Qaeda terrorist network launched a vicious, coordinated attack on the United States, killing approximately 3,000 persons. In response, the President, as Commander-in-Chief and with Congressional authorization for the use of force, took steps to protect the Nation and prevent additional threats. Among these steps, the President dispatched the armed forces of the United States to Afghanistan to seek out and subdue the al Qaeda terrorist network and the Taliban regime that had supported and protected that network. In the course of that campaign – which remains ongoing – the United States and its allies have captured or taken

control of a large number of individuals, many of whom are foreign nationals.  As authorized by, *inter alia*, a Military Order of November 13, 2001 issued by the President,[3] the United States military has transferred a number of these alien enemy combatants for detention at the United States Naval Base at Guantanamo Bay, Cuba, an area within the sovereign territory of Cuba leased for an indefinite term by the United States, and over which the United States exercises exclusive control.[4]  Approximately 600 such aliens are currently detained at Guantanamo Bay.

Pending before this Court are a number of cases brought on behalf of alien detainees in the control of the Department of Defense and held at Guantanamo Bay.  The cases commonly challenge the legality and conditions of the detention and confinement of the aliens on whose behalf the cases are brought.  Of the cases of which Respondents are now aware, before Judge Kollar-Kotelly are *Rasul v. Bush*, No. 02-CV-0299; *Al Odah v. United States*, No. 02-CV-0828; and *Habib v. Bush*, No. 02-CV-1130.[5]  Before Judge Huvelle is *Kurnaz v. Bush*, No. 04-CV-1135.  Before Judge Bates is *Khadr v. Bush*, No. 04-CV-1136.[6]  Before Judge Collyer is *Begg v. Bush*, No. 04-CV-1137.  Pending before Judge Leon are *Benchellali v. Bush*, No. 04-CV-1142 and *Boumediene v. Bush*, No. 04-CV-1166.  Before Judge Roberts is *El-Banna v. Bush*, No. 04-

---

[3] *See* 66 Fed. Reg. 57,831 (Nov. 16, 2001).

[4] *See Rasul v. Bush*, 124 S. Ct. 2686, 2690-93 (2004).

[5] The Court initially dismissed these cases on jurisdictional grounds, *Rasul v. Bush*, 215 F. Supp. 2d 55 (D.D.C. 2002), and subsequent appeals led to the Supreme Court's *Rasul* decision.

[6] A Guantanamo Bay detainee case dismissed by Judge Bates prior to the Supreme Court's decision in *Rasul* is *Sassi v. Bush*, No. 04-CV-0547.  An appeal is presently pending in that case.  The petitioners in that case are petitioners in either the *Benchellali* case before Judge Leon or the *Khadr* case before Judge Bates.

CV-1144.  Before Judge Walton are *Gherebi v. Bush*, No. 04-CV-1164 and *Almurbati v. Bush*,

04-CV-1227.[7]  And before Judge Kennedy are *Anam v. Bush*, No. 04-CV-1194 and *Abdah v.*

*Bush*, No. 04-CV-1254.  Based on the number of foreign nationals detained at Guantanamo Bay,

it is highly likely that numerous additional petitions will be filed.

Each of these cases is a petition for habeas corpus, or, in one case, a complaint essentially

constituting a habeas petition,[8] filed by "next friends" on behalf of alien detainees at Guantanamo

Bay.  The cases include as respondents the President, the Secretary of Defense, the commander of

Joint Task Force-GTMO responsible for Guantanamo Bay, and the commander of the particular

camp housing the detainees in Guantanamo Bay, and/or other government officials.[9]  Allegations

in the petitions typically include that Petitioners were apprehended in connection with hostilities

involving al Qaeda, the Taliban, and their supporters or otherwise and were taken involuntarily to

Guantanamo Bay;[10] that Petitioners are not enemy combatants and have not been informed of

---

[7] *Gherebi* was recently transferred to this District from the Ninth Circuit.  The petition was initially filed by petitioners in the Ninth Circuit Court of Appeals, which transferred the petition for disposition by the district court for the Central District of California.  *See Gherebi v. Bush*, 262 F. Supp. 2d 1064 (C.D. Cal. 2003).   After the case was appealed, decided, then vacated by the Supreme Court, the Ninth Circuit transferred the case to the District of Columbia.  *See Gherebi v. Bush*, 374 F.3d 727, 2004 WL 1534166 (July 8, 2004).

[8] *See Rasul*, 215 F. Supp. 2d at 62-64 (D.D.C. 2002) (noting that claims asserted in *Al Odah* case are "within the exclusive province of the writ of habeas corpus").

[9] The *Gherebi* petition names the President, the Secretary of Defense, and "1,000 Unknown Named United States Military Personnel and Government Officers and/or Officials."  The *Al Odah* complaint also includes the United States as respondent-defendant.

[10] *See Rasul* First Amended Petition ¶¶  23-24, 27, 32; *Al Odah* Amend. Compl. ¶ 16; *Habib* Pet. ¶¶ 16-19, 21-22; *Kurnaz* Pet. ¶¶ 6, 16-17, 19, 23-24; *Khadr* Pet. ¶¶ 16, 21-22; *Begg* Pet. ¶¶ 22-26; *Benchellali* Pet. ¶¶ 28, 30, 32; *El-Banna* First Amend. Pet. ¶¶ 19-26, 27-28; *Gherebi* Amend. Pet. ¶ 2; *Boumediene* Pet. ¶¶ 16-18, 20; *Anam* Pet. ¶¶ 26, 31, 36, 40-41, 44, 46, 52, 58, 61; *Almurbati* Pet. ¶¶ 8, 10, 12; 19-22; *Abdah* Pet. ¶¶ 19-20, 22-51.

charges against them;[11] that Petitioners have been housed in inadequate housing, without

meaningful access to families or counsel, and without opportunity to fully exercise their religious

beliefs;[12] and that Petitioners have been forced to provide involuntary statements to

interrogators.[13]  Petitioners challenge their confinement, as well as the Military Order of

November 13, 2001, as contrary to the Constitution[14] and international treaties, including the

Third and Fourth Geneva Conventions,[15] the International Covenant on Civil and Political Rights

and the American Declaration on the Rights and Duties of Man,[16] as well as customary

---

[11] *See Rasul* First Amended Petition ¶¶ 22, 29-30, 47; *Al Odah* Amend. Compl. ¶¶ 15, 18; *Habib* Pet. ¶¶ 15, 23-24, 44; *Kurnaz* Pet. ¶¶ 13-15, 34; *Khadr* Pet. ¶¶ 13, 30; *Begg* Pet. ¶¶ 17-18, 47, 52; *Benchellali* Pet. ¶¶ 25-26, 48; *El-Banna* First Amend. Pet. ¶¶ 15-16, 43; *Boumediene* Pet. ¶¶ 13-14, 25; *Anam* Pet. ¶¶ 23, 28, 33, 37, 59, 71, 73, 78; *Almurbati* Pet. ¶¶ 18, 36, 41; *Abdah* Pet. ¶¶ 15-16, 63.

[12] *See Rasul* First Amended Petition ¶¶ 33, 49; *Al Odah* Amend. Compl. ¶¶ 28-29; *Habib* Pet. ¶¶ 27, 44-45; *Kurnaz* Pet. ¶¶ 8, 34-35; *Khadr* Pet. ¶ 31; *Begg* Pet. ¶¶ 47-48; *Benchellali* Pet. ¶¶ 48-49; *El-Banna* First Amend. Pet. ¶¶ 43-44; *Gherebi* Amend. Pet. ¶ 3; *Boumediene* Pet. ¶ 25; *Anam* Pet. ¶¶ 73-74; *Almurbati* Pet. ¶ 41; *Abdah* Pet. ¶¶ 63-64.

[13] *See Rasul* First Amended Petition ¶ 32; *Habib* Pet. ¶¶ 26, 44; *Kurnaz* Pet. ¶¶ 34-35; *Khadr* Pet. ¶¶ 30-31; *Begg* Pet. ¶ 48; *Benchellali* Pet. ¶ 49; *El-Banna* First Amend. Pet. ¶ 44; *Boumediene* Pet. ¶ 25; *Anam* Pet. ¶ 73-74; *Almurbati* Pet. ¶ 41; *Abdah* Pet. ¶¶ 63-64.

[14] Constitutional provisions relied upon typically include the Due Process Clause of the Fifth Amendment, the War Powers Clause, and Article I, section 9, regarding suspension of the Privilege of the Writ of Habeas Corpus.  *See Rasul* First Amended Petition ¶¶ 52-54, 62-64; *Al Odah* Amend. Compl. ¶ 37; *Habib* Pet. ¶¶ 48-51, 59-61; *Kurnaz* Pet. ¶¶ 39-41, 63-65; *Khadr* Pet. ¶¶ 35-37, 59-61; *Begg* Pet. ¶¶ 54-56, 64-66, 71; *Benchellali* Pet. ¶¶ 53-56, 77-79; *El-Banna* First Amend. Pet. ¶¶ 48-50, 72-74; *Gherebi* Amend. Pet. ¶ 3; *Boumediene* Pet. ¶¶ 33-35, 43-45; *Anam* Pet. ¶¶ 80-82, 90-92, 97; *Almurbati* Pet. ¶¶ 43, 45, 53, 55; *Abdah* Pet. ¶¶ 73, 75, 83, 85.

[15] *See Habib* Pet. ¶¶ 56-57; *Kurnaz* Pet. ¶ 61; *Khadr* Pet. ¶ 57; *Begg* Pet. ¶¶ 22, 73; *Benchellali* Pet. ¶ 75; *El-Banna* First Amend. Pet. ¶ 70; *Gherebi* Amend. Pet. ¶ 3; *Boumediene* Pet. ¶ 41; *Anam* Pet. ¶ 88; *Almurbati* Pet. ¶ 51; *Abdah* Pet. ¶¶ 77, 79, 81.

[16] *See Kurnaz* Pet. ¶¶ 43-45; *Khadr* Pet. ¶¶ 39, 41; *Begg* Pet. ¶¶ 58, 60; *Benchellali* Pet. ¶¶ 57, 59; *El-Banna* First Amend. Pet. ¶¶ 52-54; *Boumediene* Pet. ¶¶ 37, 39; *Anam* Pet. ¶¶ 84-86;

international law.[17]  Some of the petitions additionally assert claims under the Alien Tort Statute,

28 U.S.C. § 1350, and the Administrative Procedure Act (APA), 5 U.S.C. § 702-706.[18]

Petitioners commonly seek relief in the form of release,[19] orders permitting access to counsel and

barring interrogations, and declarations that Petitioners' detention and the November 13, 2001

military order violate the Constitution, treaties, and laws of the United States, as well as

international law.[20]  Indeed, aside from specific allegations regarding the circumstances of each

Petitioners' capture, the petitions are substantially alike.  Furthermore, many of the cases involve

the same litigation counsel or coordinating counsel.[21]

    In *Al-Odah*, briefing is underway concerning whether Respondents may require certain

attorney-detainee consultations to be monitored for national security purposes.  In *Gherebi*, the

Court has established a briefing schedule for a motion to dismiss by Respondents.  And in *El-*

---

*Almurbati* Pet. ¶¶ 47, 49; *Abdah* Pet. ¶ 77, 79.

    [17] *See Rasul* First Amended Petition ¶¶ 56-60; *Habib* Pet. ¶¶ 52-55; *Kurnaz* Pet. ¶¶ 43-45; *Khadr* Pet. ¶¶ 39, 41; *Begg* Pet. ¶¶ 58, 60; *Benchellali* Pet. ¶¶ 57, 59; *El-Banna* First Amend. Pet. ¶¶ 52-54; *Boumediene* Pet. ¶ 37; *Anam* Pet. ¶¶ 84-86; *Almurbati* Pet. ¶ 51; *Abdah* Pet. ¶¶ 77, 79, 81.

    [18] *See Al Odah* Amend. Compl. ¶¶ 38-39; *Kurnaz* Pet. ¶¶ 48, 53, 57, 67; *Khadr* Pet. ¶¶ 44, 49, 53, 63; *Begg* Pet. ¶ 68; *Benchellali* Pet. ¶¶ 62, 67, 71, 81; *El-Banna* First Amend. Pet. ¶¶ 57, 62, 66, 76; *Anam* Pet. ¶ 94; *Almurbati* Pet. ¶¶ 57-59, 61-64, 66; *Abdah* Pet. ¶ 87.

    [19] In *Al Odah*, plaintiffs previously disclaimed seeking release, but the Court determined that plaintiffs "plainly challenge the lawfulness of their custody."  *Rasul*, 215 F. Supp. 2d at 62.

    [20] *See Rasul* First Amended Petition § VI; *Al Odah* Amend. Compl. (Prayer for Relief); *Habib* Pet. § V; *Kurnaz* Pet. § V; *Khadr* Pet. § V; *Begg* Pet. § V; *Benchellali* Pet. § V; *El-Banna* First Amend. Pet. § V; *Gherebi* Amend. Pet. ¶¶ 5-6; *Boumediene* Pet. § VI; *Anam* Pet. (Prayer for Relief); *Almurbati* Pet. (Prayer for Relief); *Abdah* Pet. (Prayer for Relief).

    [21] For example, in a significant number of the cases Petitioners are represented by counsel from the Center for Constitutional Rights.

*Banna*, a hearing on a TRO sought by Petitioners is scheduled for August 6, 2004, with a return to the petition currently due on August 12, 2004.

## ARGUMENT

District courts have both express and inherent authority to coordinate proceedings on cases pending before them in the interest of justice and in the service of judicial economy.  It has long been recognized that there is a "'power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'"  *Airline Pilots Ass'n v. Miller*, 523 U.S. 866, 880, n.6 (1998) (quoting *Landis v. North American Co.*, 299 U.S. 248, 254-255 (1936)).  One specific codification of this authority is FED. R. CIV. P. 42(a), a provision that recognizes not only the notion of formal consolidation, but also the power of the Court to "order a joint hearing . . . o[n] any or all the matters in issue," and to "make such orders concerning proceedings [in the several actions] as may tend to avoid unnecessary costs or delay."  FED. R. CIV. P. 42(a).[22]

Moreover, the district courts' inherent authority to manage their dockets goes beyond the measures expressed in Rule 42.  As the Federal Judicial Center's Manual for Complex Litigation (Fourth) explains, even when cases sharing common issues are pending in ***different*** judicial districts, "judges can coordinate proceedings in their respective courts to avoid or minimize duplicative activity and conflicts."  MOORE'S FED. PRACTICE, MANUAL FOR COMPLEX LITIGATION (FOURTH) 227 (2004).  Coordination measures that district courts can employ

---

[22] Petitions for a writ of habeas corpus are civil in nature, *see Hilton v. Braunskill*, 481 U.S. 770, 775-76 (1987), though different in respects from general civil litigation. *See id.* at 776 ("[w]here . . . the need is evident for principles to guide the conduct of habeas proceedings, it is entirely appropriate to use . . . [general civil] rules by analogy or otherwise.") (internal quotation marks and citation omitted).

include "joint hearings or conferences" on common legal issues, followed by "joint or parallel orders by the several courts in which the cases are pending." *Id.*[23]  In addition, the Judicial Panel on Multidistrict Litigation, in exercising its discretion to deny pretrial consolidation of multiple actions pending in different districts under 28 U.S.C. § 1407, has recognized that the goals of judicial economy and minimization of "inconsistent pretrial rulings" can at times be achieved simply through "consultation and coordination between the . . . concerned district courts[.]"  *In re Royal Am. Indus., Inc. Sec. Litig.*, 407 F. Supp. 242, 244 (J.P.M.L. 1976).

The reach of district courts' authority to manage their own dockets is illustrated by the procedures adopted by the District Court for the Central District of California in resolving constitutional challenges to the Sentencing Reform Act of 1984, and the sentencing guidelines promulgated thereunder by the U.S. Sentencing Commission.  There, the district court convened an en banc panel of the court to consider the common question of the Sentencing Guidelines' constitutionality – a question that had surfaced in 22 separate criminal cases.  The court ordered the common issue "transferred . . . from each of the [separate] cases . . . to the Court as a whole," and accepted joint briefing, conducted a joint hearing, and issued an en banc opinion on the constitutional challenge, from which a number of district judges dissented.  *See United States v. Ortega Lopez*, 684 F. Supp. 1506, 1508 (C.D. Cal. 1988), *abrogated by United States v. Brady*, 895 F.2d 538 (9th Cir. 1990).

---

[23] Indeed, district courts have used such cooperative approaches even in matters where related cases are pending simultaneously in state and federal court, "jointly presid[ing] over hearings on pretrial motions, based on a joint motions schedule," relying on "coordinated briefs so that one set of briefs can be used in both state and federal courts . . . ." MOORE'S FED. PRACTICE, MANUAL FOR COMPLEX LITIGATION (FOURTH) at 236.

This court's local rules include provisions premised on similarly broad principles of inherent authority as to case management issues.  Under LCvR 40.5(e), this court's Calendar Committee has the authority to refer "two or more cases assigned to different judges" to "one judge" for a "specific purpose . . . in order to avoid duplication of judicial effort," so long as the assignment is "with the consent of the judge to whom the cases will be referred" and the "scope of authority of said judge" is identified.  More broadly, LCvR 40.7(h) recognizes the authority of the Chief Judge to "take such other administrative actions, after consultation with appropriate committees of the Court, as in his/her judgment are necessary to assure the just, speedy and inexpensive determination of cases, and are not inconsistent with these Rules."

The habeas petitions before the Court here present a number of common legal questions that would plainly benefit from coordinated consideration and resolution, whether in a "joint hearing" under FED. R. CIV. P. 42(a) or under a coordinated schedule determined jointly by all of the district judges presiding over the cases.  These issues include:  (1) whether the detention, as described in the pleadings, violates the Constitution and laws cited in the petitions, and, underlying this question, whether detainees have rights under the Constitution notwithstanding the alleged facts that they are not United States citizens, that they were captured outside the United States, and are currently detained outside the United States and its territories; (2) whether, based on the factual allegations in the petitions, the detainees may challenge their detention under various treaties and conventions to which the United States is signatory, and under principles of "customary international law," and, underlying this question, whether the cited treaties and conventions are self-executing and claims thereunder cognizable in a habeas proceeding; (3) whether these habeas proceedings must, or should in the exercise of the Court's discretion, be

-11-

deferred pending completion of the CSRT hearings on the status of the detainees, which will

produce formal determinations (and factual records) by the Department of Defense on the

circumstances of the detainees' capture and whether those circumstances qualify them as "enemy

combatants," *see Hamdi*, 124 S. Ct. at 2648-50 (plurality opinion) (describing contours of

acceptable military process for determining the status of United States citizens detained as

"enemy combatants");[24] and (4) whether and to what extent the status determinations reached in

the CSRT process merit deference in this Court's consideration of the habeas petitions. *See id.* at

2649 (plurality opinion) (stating that, in military review process, government's evidence

concerning circumstances of capture should be entitled to "presumption" of validity).  Moreover,

Petitioners in at least three cases have filed motions seeking to temporarily enjoin the

implementation of the CSRT hearings.  *See supra* note 2.

        In addition, there are common procedural questions that must be addressed at the outset

of these proceedings.  These include whether, under the U.S. Constitution, the detainees have a

right to consult with Petitioners and their counsel for purposes of prosecuting these habeas

petitions, and for other purposes, and whether Respondents may place conditions on such

attorney-detainee consultations, including whether Respondents may require certain attorney-

detainee consultations to be monitored for national security purposes.  Other common procedural

questions involve appropriate procedures for the handling of any classified factual or other

submissions that may be required in these cases, the propriety of and limitations on discovery,

and hearing procedures.

--------------------------------------------

        [24]  The Department of Defense recently created a such a process for alien detainees at
Guantanamo Bay.  *See* Department of Defense website at:
              http://www.defenselink.mil/releases/2004/nr20040707-0992.html

-12-

Because these cases share such issues in common, some form of coordinated scheduling and consideration of these issues, including, where appropriate, a joint hearing, will promote interests of efficiency and economy for both the Court and the parties.  Joint briefing will conserve the parties' resources by relieving them of the burden of preparing separate sets of briefs on the same issues.  A joint hearing or argument will provide all of the judges presiding over these actions with a comprehensive oral presentation on the important, common legal and procedural questions presented by the petitions.  And a joint hearing or another form of coordinated treatment will minimize delay in the resolution of these questions.

Perhaps most important, coordinated treatment would additionally minimize the risk of conflicting determinations on the fundamental legal questions that unite the petitions.  Even if the Court were simply to accept coordinated briefing and argument on the common legal questions presented in these cases, with each district judge reserving the discretion to reach his or her own conclusion and enter separate orders, the mere fact of coordinated scheduling and joint hearing, with consequent deliberations among the various judges of the Court, the opportunities for conflicting rulings would be reduced.  The seriousness of the issues raised in these petitions, and the sensitive national security context in which they arise, make avoidance of conflicting rulings – if at all possible – imperative.

There can be no serious argument that the coordination sought by Respondents would prejudice the parties. With respect to Respondents, coordinated presentation and resolution of the common legal issues in the petitions would help alleviate the logistical burdens Respondents face in responding to multiple habeas petitions on potentially divergent schedules.  Although there are currently just over a dozen cases filed, and despite the fact that only a handful of those have

required any briefing or hearings at this point, the logistical difficulties that lie ahead already are apparent.  For instance, Respondents are presently simultaneously preparing briefs regarding a TRO challenging the CSRT process, the conditions of access for counsel, and the merits in a motion to dismiss in different cases.  Respondents have already argued two motions for a TRO in a single day.  Furthermore, there are approximately 600 foreign nationals detained at Guantanamo Bay, so additional petitions are certain to be filed.  At some point in the not-too-distant future, the logistical difficulties presented today will become insurmountable – not only to Petitioners' and Respondents' Counsel, but to this Court and its personnel, Department of Justice personnel involved in processing security clearances for Petitioners' counsel, and Department of Defense personnel who (in addition to being called upon to process requests related to these cases) have pressing responsibilities related to their core duties in connection with the ongoing hostilities in Afghanistan and elsewhere.  A coordinated schedule would be undeniably preferable to multiple filings and hearings on overlapping issues in an increasing number of cases with various schedules.  Moreover, once the common legal issues are resolved, and the shape that these habeas proceedings must therefore take determined, Petitioners can proceed efficiently to tee up any remaining issues pertaining to individual detainees before the individual judges presiding over their actions.

## CONCLUSION

For the reasons set forth above, the Court should grant this Motion and order a Joint Case Management Conference for purposes of cataloging the common questions presented by these petitions, and entering a joint scheduling order allowing for the orderly and coordinated resolution of these questions.

Dated:  August 4, 2004                    Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

KENNETH L. WAINSTEIN
United States Attorney

THOMAS R. LEE
Deputy Assistant Attorney General

DAVID B. SALMONS
Assistant to the Solicitor General

ROBERT D. OKUN
D.C. Bar No. 457-078
Chief, Special Proceedings Section
555 Fourth Street, N.W.
Room 10-435
Washington, D.C. 20530
(202) 514-7280

   /s/ Terry M. Henry
JOSEPH H. HUNT (D.C. Bar No. 431134)
VINCENT M. GARVEY (D.C. Bar No. 127191)
TERRY M. HENRY
PREEYA M. NORONHA
Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.   Room 7144
Washington, DC  20530
Tel.:  (202) 514-4107
Fax:  (202) 616-8470

Attorneys for Respondents