# PROTECTIVE ORDER
## AND
## PROCEDURES FOR COUNSEL ACCESS TO DETAINEES
## SUBJECT TO MILITARY COMMISSION PROSECUTION
## AT THE UNITED STATES NAVAL STATION
## IN GUANTANAMO BAY, CUBA

For purposes of litigating cases before military commissions, the following Protective Order (Section I) and Procedures for Counsel Access to Detainees at the U.S. Naval Station in Guantanamo Bay, Cuba (Section II), establish procedures for protecting personal security, safeguarding protected and national security information and documents, and for counsel access to all detainees in the control of the Department of Defense ("DoD") at the U.S. Naval Station in Guantanamo Bay, Cuba ("GTMO"). These rules for access are intended to be consistent, to the extent practicable, with the Protective Order and Requirements for Access to Detainees at the United States Naval Station, Guantanamo Bay, Cuba, issued by the United States District Court for the District of Columbia on September 11, 2008, and the Amended Protective Order for Habeas Cases Involving Top Secret/Sensitive Compartmented Information and Procedures for Counsel Access to Detainees at the United States Naval Station in Guantanamo Bay, Cuba, in Habeas Cases Involving Top Secret/Sensitive Compartmented Information issued by the United States District Court for the District of Columbia on January 9, 2009.

WHEREAS, the cases brought against those currently detained at Guantanamo Bay, Cuba, often involve national security information or documents, the storage, handling, and control of which require special security precautions; and

WHEREAS, access to national security information or documents requires both a security clearance and a "need to know"; and

WHEREAS, the detainee cases might also involve other protected information or documents, the storage, handling, and control of which might require special precautions in order to protect the security of the United States and other significant interests; and

WHEREAS, detainees have actions pending in the United States District Court for the District of Columbia, and the United States Court of Appeals for the District of Columbia, and these courts have established procedures to protect personal security, national security information, and protected information; and

WHEREAS, on September 11, 2008, the United States District Court for the District of Columbia issued a Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Station in Guantanamo Bay, Cuba, 577 F.Supp.2d 143 (D. D.C. 2008)(Hogan, J.) in the habeas proceedings brought by detainees at Guantanamo, and on January 9, 2009, issued the Amended Protective Order for Habeas Cases Involving Top Secret/Sensitive Compartmented Information and Procedures for

Counsel Access to Detainees at the United States Naval Station in Guantanamo Bay, Cuba, in Habeas Cases Involving Top Secret/Sensitive Compartmented Information; and

Case 1:08-cv-02083-PLF Document 111-1 Filed 03/07/11 Page 2 of 34

WHEREAS, the U.S. Bureau of Prisons has the general authority and obligation to regulate access, both social and legal, to its detainee populations "to ensure the safety, security and orderly operation of Bureau of Prisons facilities, and to protect the public," and also has the authority and responsibility to impose Special Administrative Measures that are "reasonably necessary to protect persons against the risk of death or serious bodily injury," 28 C.F.R. Sec. 501.3(a), and, in particular, to prevent detainees suspected of terrorist acts from directing or facilitating further acts of terrorism while in detention, *see, e.g., United States v. Lynne Stewart*, 590 F.3d 93 (2d Cir. 2009); and

WHEREAS, detainees at GTMO include those suspected of terrorist acts and, in my judgment, regulations similar to Special Administrative Measures are appropriate and necessary at GTMO for purposes of cases brought before military commissions; and

WHEREAS, on May 19, 2008, the Commander of Joint Task Force – Guantanamo issued a practices guide regarding visitation between Military Commissions counsel and detainees, which required, among other things, a cursory review of legal mail, and contemplated the possibility that a Privilege Team could be created in the future; and

WHEREAS, on March 2, 2011, the Commander of Joint Task Force-Guantanamo issued a memorandum indicating the necessity for a Protective Order for military commissions which recommended, *inter alia*, that the Convening Authority for military commissions issue a Protective Order creating a Privilege Team for military commissions modeled after the one used for habeas cases, to screen materials provided by defense counsel to their clients; and

WHEREAS, it is desirable that appropriate security measures be employed consistently and uniformly in all cases; and

WHEREAS, as the Director, Office of the Convening Authority, and the Convening Authority for Military Commissions, I am responsible for establishing procedures to ensure the security of personnel involved in military commission prosecutions and to protect national security information and protected information involved in those prosecutions;

THEREFORE:

To protect personal security, national security information and documents, and protected information, I establish the following Protective Order and Requirements for Access to Detainees.

I. PROTECTIVE ORDER

## A. Overview and Applicability

1. This Protective Order establishes procedures that must be followed by detainees and their respective counsel, all others involved in the defense of commissions cases, including foreign attorney consultants, interpreters and translators, witnesses, experts, consultants, support personnel, and all other individuals who, in connection with the defense of commissions cases, receive access to classified national security information or documents or other protected information in connection with military commissions. This Protective Order does not apply to counsel representing detainees in habeas proceedings in the United States District Court for the District of Columbia or the United States Court of Appeals for the District of Columbia. If a detainee's counsel represents a detainee in habeas proceedings in the United States District Court for the District of Columbia or the United States Court of Appeals for the District of Columbia and also represents the detainee under the Military Commissions Act, 10 U.S.C. § 948k(a)(3), the Protective Orders issued by the United States District Court for the District of Columbia or the United States Court of Appeals for the District of Columbia shall control matters related to the habeas proceedings, and the provisions of this Protective Order shall apply to matters relating to military commissions. This Protective Order must also be adhered to by the Privilege Team as defined in ¶ 58, *infra*. All other persons not included in this paragraph are subject to the orders and procedures of the Commander, Joint Task Force-Guantanamo (JTF-GTMO).

2. The procedures set forth in this Protective Order apply to all aspects of the military commission process and may be modified by further order or upon application by any party. The Convening Authority for military commissions retains the authority to enforce or modify the terms of this Protective Order. Once charges are referred to trial by military commission, the terms of this Protective Order and Procedures for Counsel Access will be subject to the requirements of applicable statutes and orders of a court or commission of competent jurisdiction, including, but not limited to, the Military Commissions Act of 2009 (10 U.S.C. §§ 949p-1, *et seq*.) and Military Commissions Rule of Evidence 505.

3. Nothing in this Protective Order precludes the government's use of classified information as otherwise authorized by law outside of these matters.

4. Counsel for detainees are responsible for advising their client, their support staff, interpreters, translators, witnesses, experts, consultants, employees, and all others involved in the defense of the client of this Protective Order's contents.

5. Counsel for detainees are bound by the terms and conditions set forth in the Procedures for Counsel Access, Section II, *infra*. This Protective Order specifically incorporates by reference all terms and conditions established in the procedures contained in the Procedures for Counsel Access. Any violation of those terms and conditions will also be deemed a violation of this Protective Order.

6. The Privilege Team is hereby created pursuant to the provisions of this protective
Order and Procedures for Counsel Access. Members of the Privilege Team shall not

Case 1:08-cv-02083-PLF Document 111-1 Filed 03/07/11 Page 4 of 34

disclose to any person any information provided by a detainee or detainee's counsel,
other than information provided in a filing with the Court, except as provided in, and
consistent with, the provisions of the Procedures for Counsel Access, ¶¶ 84-86, *infra*.

## B. Definitions

7. As used in this Protective Order, the words "documents" and "information" include,
but are not limited to, all written or printed matter of any kind, formal or informal,
including originals, conforming copies and non-conforming copies, whether different
from the original by reason of notation made on such copies or otherwise, and further
include, but are not limited to:

a. papers, correspondence, memoranda, notes, letters, reports, summaries,
photographs, maps, charts, graphs, interoffice and intra-office communications,
notations of any sort concerning conversations, meetings, or other
communications, bulletins, teletypes, telegrams, facsimiles, invoices, worksheets,
and drafts, alterations, modifications, changes, and amendments of any kind to the
foregoing;

b. graphic or oral records or representations of any kind, including, but not limited
to, photographs, charts, graphs, microfiche, microfilm, videotapes, sound
recordings of any kind, and motion pictures;

c. electronic, mechanical or electric records of any kind, including, but not limited
to, tapes, cassettes, disks, recordings, electronic mail, films, typewriter ribbons,
word processing or other computer tapes or disks, and all manner of electronic
data processing storage; and

d. information acquired orally.

8. The terms "classified national security information and/or documents," "classified
information" and "classified documents" mean:

a. any classified document or information that was classified by any Executive
Branch agency in the interests of national security or pursuant to Executive Order,
including Executive Order 13526, as amended, or its predecessor Orders, as
"CONFIDENTIAL," "SECRET," or "TOP SECRET," or additionally controlled
as "SENSITIVE COMPARTMENTED INFORMATION (SCI)," or any
classified information contained in such document;

b. any document or information, regardless of its physical form or characteristics,
now or formerly in the possession of a private party that was derived from United
States government information that was classified, regardless of whether such
document or information has subsequently been classified by the government

4

pursuant to Executive Order, including Executive Order 13526, as amended, or its predecessor orders, as "CONFIDENTIAL," "SECRET," or "TOP SECRET," or additionally controlled as "SENSITIVE COMPARTMENTED INFORMATION (SCI)";

c. verbal or non-documentary classified information known to detainees or detainees' counsel; or

d. any document and information as to which detainees or detainees' counsel were notified orally or in writing that such document or information contains classified information.

9. All classified documents, and information contained therein, shall remain classified unless the documents bear a clear indication that they were declassified by the agency or department that is the original classification authority of the document or the information contained therein (hereinafter, "original classification authority").

10. The terms "protected information and/or documents," "protected information," and "protected documents" mean any document or information, including controlled unclassified information, designated by the government as not suitable for public filing, subject to the procedures in ¶¶ 34 through 45 of this Protective Order.

11. As used in this Protective Order, the term "detainee's counsel" or "detainees' counsel" includes attorneys employed or retained by or on behalf of a detainee for purposes of representing the detainee under the Military Commissions Act of 2009, 10 U.S.C. § 948k(a)(3), as well as co-counsel, foreign attorney consultants, interpreters and translators, paralegals, investigators, experts, consultants, witnesses, and all other personnel or support staff employed or engaged to assist in the defense of the detainee in military commissions. Requirements and procedures in Section I.D and Section I.E for security clearances and access to protected information apply to all members of the staff just described, regardless of whether they have direct contact with detainees, and must be accomplished before each person is allowed access to classified or protected information.

12. "Access to classified information" or "access to protected information" means having access to, reviewing, reading, learning, or otherwise coming to know in any manner any classified information or protected information.

13. "Secure area" means a physical facility accredited or approved for the storage, handling, and control of classified information.

14. "Unauthorized disclosure of classified information" means any knowing, willful, or negligent action that could reasonably be expected to result in a communication or physical transfer of classified information to an unauthorized recipient.

15. Security officers will assist the parties in complying with requirements for protecting national security information.

>    a. I designate Michael Stephens, Teresa Woodard and Priscilla Matos as Special Security Officers (collectively, "SSO") for the purpose of handling requests for security clearances and providing physical security arrangements for the secure facilities necessary to protect against unauthorized disclosure of any classified documents or information to be made available in connection with these cases. Additional Special Security Officers may be appointed. Detainees' counsel shall seek guidance from the SSO with regard to appropriate storage, handling, and transmittal of classified documents or information in the secure facilities provided for detainees' counsel.

>    b. I designate Bradley Olson and Andres Ramirez as Commission Security Officers (collectively, "CSO") for the purpose of providing security arrangements necessary for the storage, handling, transmission and filing with the commission of classified information related to filings with the commission, to protect against unauthorized disclosure of any classified documents or information to be made available in connection with these cases. Additional Commission Security Officers may be appointed. Detainees' counsel shall seek guidance from the CSO with regard to appropriate storage, handling, transmittal, and filing of classified documents or information in filings with the military commission.

>    c. For all persons identified by name in the preceding two sub-paragraphs, replacements may from time to time be appointed by the Convening Authority or his/her designee without need to re-publish this Protective Order.

**D. Access to and Control of Classified Information and Documents**

16. Without authorization from the government, no detainee or detainee's counsel shall have access to any classified information involved in these cases unless that person has done the following:

>    a. received the necessary security clearance from appropriate DoD authorities and signed an appropriate security non-disclosure agreement as determined by the Special Security Officer;

>    b. signed the Memorandum of Understanding ("MOU"), attached hereto as Exhibit A, agreeing to comply with the terms of this Protective Order. This MOU is in addition to any other non-disclosure agreement or other agreement required as a condition of representation before military commissions; and

>    c. provided to the Chief Defense Counsel detailed verifiable information regarding past employment, including a list of prior case assignments, to ensure

against any conflicts of interest with the case to which detainee's counsel is
Case 1:08-cv-02083-PLF Document 111-1 Filed 03/07/11 Page 7 of 34
currently assigned.

17. In order to be provided access to classified information, detainee's counsel must execute the MOU appended to this Protective Order as Exhibit A, and shall file executed originals of the MOU with the SSO and provide copies to the CSO, government counsel and, where applicable, the military commission. Such execution, filing, and submission of the MOU is a condition precedent to a detainee's counsel having access to, or continued access to, classified information for the purposes of these proceedings.

18. The substitution, departure, or removal of any detainee's counsel from these cases for any reason shall not release that person from the provisions of this Protective Order or the MOU executed in connection with this Protective Order.

19. The government shall arrange for one or more appropriately approved secure areas for detainee's counsel's use. The secure areas shall contain a working area supplied with secure office equipment and secure storage containers reasonably necessary for preparing detainee's cases. The government shall bear expenses for the secure areas and the equipment therein.

20. The SSO shall establish procedures to ensure that the secure area is accessible to detainee's counsel during normal business hours and at other times on reasonable request as approved by the SSO. The SSO shall establish procedures to ensure the secure area is maintained and operated in the most efficient manner consistent with the protection of classified information. The SSO or SSO designee may place reasonable and necessary restrictions on the schedule of use of the secure area in order to accommodate appropriate access to all detainees' counsel in these and other proceedings.

21. All classified information the government provides to detainees' counsel, and all classified information detainee's counsel otherwise possesses or maintains, shall be stored, maintained, and used only in the secure area. Classified information may only be stored, handled, and transported in accordance with Executive Order 13526, as amended, or its predecessor Orders, DoD 5200.1-R, AI 26, OSD Information and Security Supplement to DoD 5200.1-R, and DoD Manual 5105.21-M1 (for TS/SCI).

22. No documents containing classified information may be removed from the secure area unless authorized by the SSO or SSO designee supervising the area.

23. Consistent with other provisions of this Protective Order, detainee's counsel shall have access to the classified information made available to them in the secure area and shall be allowed to take notes and prepare documents with respect to those materials.

24. Detainee's counsel shall not copy or reproduce any classified information in any form, except with the SSO's approval or in accordance with the procedures established by the SSO for the operation of the secure area.

25. All documents prepared by detainees or detainees' counsel that contain or may contain classified information—including, without limitation, notes taken of memoranda prepared by counsel and pleadings or other documents intended for filing with the Court—shall be transcribed, recorded, typed, duplicated, copied, or otherwise prepared only by persons possessing an appropriate approval for access to classified information. Such activities shall take place in the secure area on approved word processing equipment and in accordance with the procedures approved by the SSO. All such documents and any associated materials containing classified information—such as notes, memoranda, drafts, copies, typewriter ribbons, magnetic recordings, and exhibits—shall be maintained in the secure area unless and until the SSO advises that those documents or associated materials are unclassified in their entirety. None of these materials shall be disclosed to government counsel unless authorized by the military commission, by detainees' counsel, or as otherwise provided in this Protective Order. Once these materials have been determined no longer of use, their destruction shall be done only by the SSO.

26. Detainee's counsel may discuss classified information within the secure area or another area authorized by the SSO only. Detainee's counsel shall not discuss classified information over any non-secure communication system, such as standard commercial telephone instruments or office intercommunication systems, and shall not transmit or discuss classified information in non-secure electronic mail communications of any kind.

27. The SSO or SSO designee shall not reveal to any person the content of any conversations he or she hears by or among detainees' counsel, nor reveal the nature of documents being reviewed by them or the work generated by them, except as necessary to report violations of this Protective Order to the Convening Authority or, after referral, the military judge, or to carry out their duties pursuant to this Protective Order. Additionally, the presence of the SSO or SSO designee shall not be construed to waive, limit, or otherwise render inapplicable the attorney-client privilege or work product protections.

28. Detainee's counsel shall not disclose the contents of any classified documents or information to any person, including counsel in related cases of Guantanamo Bay detainees in military commissions or other courts (including, but not limited to, habeas proceedings), except those persons authorized by this Protective Order, a court of competent jurisdiction, and counsel for the government with the appropriate clearances and the need to know that information. After referral of charges, detainee's counsel may seek authorization to disclose classified information to appropriately cleared counsel in related cases of detainees at Guantanamo Bay, Cuba, from the military commission through the procedures established by the Military Commissions Act of 2009, the Manual for Military Commissions, and Military Commission Rule of Evidence 505.

29. Detainee's counsel shall not disclose to a detainee classified information which was not provided by that detainee directly to detainee's counsel during the course of communications (i.e., Legal Mail and detainee's counsel meetings). Statements of the detainee that detainee's counsel acquires from classified documents cannot be shared

authorized to declassify the classified information. After referral of charges, detainee's
counsel may seek authorization to disclose to that detainee classified information not
provided directly by that detainee to detainee's counsel during the course of
communications (i.e., Legal Mail, detainee's counsel meetings) from the military
commission through the procedures established by the Military Commissions Act of
2009, the Manual for Military Commissions, and Military Commission Rule of Evidence
505.

30. Except as otherwise provided herein, no detainee or detainees' counsel shall disclose
or cause to be disclosed any information which the detainee or detainee's counsel knows
or reasonably should know is classified in connection with any hearing or proceeding in
these cases.

31. Except as otherwise stated in this paragraph, and to ensure the security of the United
States of America, at no time, including any period subsequent to the conclusion of these
proceedings, shall detainees' counsel make any public or private statements disclosing
any classified information or documents accessed pursuant to this Protective Order,
including the fact that any such information or documents are classified. In the event that
classified information enters the public domain, counsel is nonetheless precluded from
making private or public statements about the information. Counsel may not make any
public or private statements revealing personal knowledge from non-public sources
regarding the classified or protected status of the information or disclosing that counsel
had personal access to classified or protected information confirming, contradicting, or
otherwise relating to the information already in the public domain. Only after classified
information has been properly declassified by appropriate authority may formerly
classified information in the public domain be the subject of public or private statements
from counsel. In an abundance of caution and to help ensure clarity on this matter, it is
emphasized that counsel shall not be the source of any classified or protected information
entering the public domain. As stated in more detail in ¶ 51 of this Protective Order,
failure to comply with these rules may result in the revocation of counsel's security
clearance as well as civil and criminal liability.

32. The foregoing does not prohibit a detainee's counsel from citing or repeating
information in the public domain that detainee's counsel does not know or have reason to
know to be classified information or a classified document or derived from classified
information or a classified document.

33. All documents containing classified information prepared, possessed or maintained
by, or provided to, detainee's counsel—except filings submitted to the Court and served
on government counsel—shall remain at all times in the SSO's control (including secure
locations established by the SSO) for the duration of these cases. Upon final resolution of
these cases, including all appeals, the SSO shall dispose of all such documents in
accordance with DoD regulations while assuring client confidentiality.

34. Should government counsel in these cases wish to have a military commission deem any document or information "protected," government counsel shall disclose the information to qualified counsel for a detainee (i.e., counsel who have satisfied the necessary prerequisites of this Protective Order for the viewing of protected information) and attempt to reach an agreement about the designation of the information prior to filing a motion with the military commission. Detainee's counsel shall treat such disclosed information as protected unless and until the military commission rules that the information should not be designated as protected.

35. Without authorization from the government or the military commission, protected information shall not be disclosed or distributed to any person or entity other than the following:

> a. detainee's counsel, provided such individuals signed the Acknowledgment, attached hereto as Exhibit B, attesting to the fact that they read this Protective Order and agree to be bound by its terms; and

> b. the military commission and its support personnel.

36. The execution of the Acknowledgment is a condition precedent to a detainee's counsel having access to, or continued access to, protected information for the purposes of these proceedings. A copy of each executed Acknowledgment shall be kept by government counsel making the disclosure until thirty days after the termination of proceedings, including appeals.

37. The substitution, departure, or removal of a detainee's counsel from these cases for any reason shall not release that person from the provisions of this Protective Order or the Acknowledgment executed in connection with this Protective Order.

38. A detainee's counsel shall not disclose the contents of any protected documents or information to any person, including counsel in related cases brought by Guantanamo Bay detainees, except as authorized by this Protective Order, the military commission, or government counsel. Detainee's counsel shall maintain all protected information and documents received through this proceeding in a confidential manner. Detainee's counsel may seek, on a case-by-case basis, authorization from appropriate DoD officials to disclose protected information to appropriately cleared counsel in related cases of detainees at Guantanamo Bay, Cuba. Such authorization shall not be unreasonably withheld. If detainee's counsel believes authorization is being unreasonably withheld, counsel may seek relief from the Convening Authority or the military commission.

39. A detainee's counsel shall not disclose protected information not provided by a detainee to that detainee without prior concurrence of government counsel or express permission of the military commission or the Convening Authority.

10

40. Except as otherwise provided herein, no detainee or detainee's counsel shall disclose or cause to be disclosed any information which the detainee or detainee's counsel knows or reasonably should know is protected in connection with any hearing or proceeding in these cases.

41. At no time, including any period subsequent to the conclusion of these proceedings, will detainee's counsel make any public or private statements disclosing any protected information or documents accessed pursuant to this Protective Order, including the fact that any such information or documents are protected.

42. Protected information shall be used only for purposes directly related to these cases and not for any other litigation or proceeding, except by leave of the military commission or the Convening Authority. Photocopies of documents containing such information shall be made only to the extent necessary to facilitate the permitted use hereunder.

43. Nothing in this Protective Order shall prevent the government from using for any purpose protected information it provides a party. Nothing in this Protective Order shall entitle another party to protected information.

44. Supplying protected information to another party does not waive privilege with respect to any person or use outside that permitted by this Protective Order.

45. Within sixty days of the resolution of these actions, and the termination of any appeals therefrom, all protected documents or information, and any copies thereof, shall be promptly destroyed, provided that the party to whom protected information is disclosed certifies in writing that all designated documents and materials have been destroyed, and further provided that government counsel may retain one complete set of any such materials that were presented in any form to the military commission. Any such retained materials shall be placed in an envelope or envelopes marked "Protected Information Subject to Protective Order." In any subsequent or collateral proceeding, a party may seek discovery of such materials from the government, without prejudice to the government's right to oppose such discovery or its ability to dispose of the materials pursuant to its general document retention policies.

## F. Procedures for Filing Documents

46. Classified Filings. Any pleading or other document filed by a detainee *pro se,* or by a detainee's counsel, that a detainee or detainee's counsel knows or reasonably should know includes classified information, shall be filed with the military commission in accordance with the provisions of the Manual for Military Commissions, the Military Commissions Rules of Evidence, the Regulation for Trial by Military Commission and the Rules of Practice for the Military Commissions Trial Judiciary applicable to filing classified materials. Presumptively classified information that detainee's counsel learned from a high-value detainee, *see infra* ¶ 57, ¶ 69(b) and ¶ 77, but has not been determined to be unclassified by the appropriate government agency, shall be filed pursuant to the procedures specified for classified information.

a. Classified filings must be marked with the appropriate classification markings (e.g., "SECRET" or "TOP SECRET"). Each paragraph of a document containing classified information shall have an appropriate classification marking (e.g. "(U)," "(S)," or "(TS)").

b. Copies shall be provided to the opposing party and the Clerk of Court by secure communication.

47. <u>Protected Information Filing</u>. Any pleading or other document filed by a detainee *pro se,* or by a detainee's counsel, that a detainee or detainee's counsel knows or reasonably should know contains protected information, shall be filed with the military commission in accordance with the provisions of the Manual for Military Commissions, the Military Commissions Rules of Evidence, the Regulation for Trial by Military Commission and the Rules of Practice for the Military Commissions Trial Judiciary applicable to filing materials containing protected information. The presence, or potential presence, of protected information in any pleading or document that contains or may contain classified material shall not affect the method of filing such pleading or document; it shall be governed by the rules applicable to the filing of classified material under ¶ 46.

48. <u>Classified/Protected Filings by the Government</u>. Nothing herein requires the government to disclose classified or protected information. Additionally, nothing herein prohibits the government from submitting classified or protected information to the military commission *in camera* or *ex parte* in these proceedings or entitles a detainee or a detainee's counsel access to such submissions or information. Except for good cause shown in the filing, the government shall provide a detainee or detainee's counsel with notice on the date of the filing.

49. <u>Redacted Versions of Filings for the Public Record</u>. When a detainee or detainee's counsel files with the military commission pleadings or documents that contain classified or protected materials, a redacted version of the pleading or document shall be prepared in a manner suitable for public release and filed in accordance with the provisions of the Manual for Military Commissions, the Rules for Military Commissions, the Military Commissions Rules of Evidence, the Regulation for Trial by Military Commission, and the Rules of Practice for the Military Commissions Trial Judiciary.

50. <u>Disclosure of Protected or Classified Information on the Public Record</u>. In the event government counsel believe that a party has disclosed classified or protected information to the public, government counsel shall notify the CSO, who shall take appropriate measures to retrieve the classified or protected information. A copy of the filing shall then be lodged with the CSO and treated according to ¶ 46 or ¶ 47 of this Protective Order. Nothing herein limits the government's authority to take necessary remedial action to ensure the protection of the classified or protected information.

51. Any unauthorized disclosure of classified information may constitute violations of United States criminal laws. Additionally, any violation of the terms of this Protective Order shall be immediately brought to the attention of the Convening Authority and, where applicable, the military commission. Any breach of this Protective Order may result in administrative sanctions, including the termination of access to classified information and protected information, and may result in referral for criminal prosecution (*see, e.g.*, Executive Order 13526, as amended).  Persons subject to this Protective Order are advised that direct or indirect unauthorized disclosure, retention, or negligent handling of classified documents or information could cause damage to the national security of the United States or may be used to the advantage of an adversary of the United States or against the interests of the United States. Persons subject to this Protective Order are also advised that direct or indirect unauthorized disclosure, retention, or negligent handling of protected documents or information could risk the security of United States government personnel and facilities and other significant government interests. This Protective Order is to ensure that those authorized to receive classified information and protected information will not divulge this information to anyone who is not authorized to receive it without prior written authorization from the original classification authority and in conformity with this Protective Order.

52. The termination of these proceedings shall not relieve any person or party provided classified information or protected information of his, her, or its obligations under this Protective Order.

## II. PROCEDURES FOR COUNSEL ACCESS TO DETAINEES
## AT THE U.S. NAVAL STATION IN GUANTANAMO BAY, CUBA

### A. Applicability

53. These Procedures for Counsel Access to Detainees at the U.S. Naval Station in Guantanamo Bay, Cuba ("Procedures"), shall govern counsel access to all detainees in the control of the Department of Defense ("DoD") at the U.S. Naval Station in Guantanamo Bay, Cuba ("GTMO"), for purposes of defending cases before military commissions.

54. These Procedures do not apply to counsel who are retained solely to assist detainees in habeas corpus proceedings in the United States District Court for the District of Columbia or other federal courts. Access by petitioner's counsel is covered by the Protective Order and Requirements for Access to Detainees at the United States Naval Station, Guantanamo Bay, Cuba, issued by the United States District Court for the District of Columbia on September 11, 2008, and the Amended Protective Order for Habeas Cases Involving Top Secret/Sensitive Compartmented Information and Procedures for Counsel Access to Detainees at the United States Naval Station in Guantanamo Bay, Cuba, in Habeas Cases Involving Top Secret/Sensitive

Compartmented Information issued by the United States District Court for the District of Columbia on January 9, 2009. If a detainee's counsel represents a detainee in habeas proceedings in the United States District Court for the District of Columbia or the United States Court of Appeals for the District of Columbia and also represents the detainee under the Military Commissions Act, 10 U.S.C. § 948k(a)(3), the Protective Orders issued by the United States District Court for the District of Columbia or the United States Court of Appeals for the District of Columbia shall control matters related to the habeas proceedings, and the provisions of this Protective Order shall apply to matters relating to military commissions.

## B. Definitions

55. "Communications" means all forms of communication between counsel and a detainee, including oral, written, electronic, or by any other means.

56. As used in these Procedures, "detainee's counsel" or "detainees' counsel" means attorneys employed or retained by or on behalf of a detainee for purposes of representing the detainee under the Military Commissions Act, 10 U.S.C. § 948k(a)(3), as well as co-counsel, foreign attorney consultants, interpreters and translators, paralegals, investigators, experts, consultants, witnesses, and all other personnel or support staff employed or engaged to assist in the defense of a detainee in military commissions.

57. "Detainee" means an individual now held by the DoD at the U.S. Naval Station at Guantanamo Bay, Cuba. HVD is defined as one of the fifteen high-value detainees who the United States Government has publicly acknowledged to have been detained by the Central Intelligence Agency (CIA) prior to their transfer to Department of Defense (DoD) custody at the U.S. Naval Station at Guantanamo Bay, Cuba.

58. "Privilege Team" means a team comprised of one or more attorneys employed by the DoD and one or more intelligence or law enforcement personnel, for the purpose of reviewing communications between detainees and their counsel pursuant to this Order, while protecting the attorney-client and related privileges that may be reflected in those materials. Members of the Privilege Team shall not have taken part in, and, in the future, will not take part in, any domestic or foreign court, military commission, or combatant status tribunal proceedings involving the Detainee. If required, the Privilege Team may include interpreters and translators, provided that such personnel meet these same criteria. Prior involvement as a member of the Privilege Team for habeas proceedings does not disqualify an individual from serving on a military commission Privilege Team.

59. "Special Litigation Team" means a team comprised of one or more attorneys acting on behalf of the DoD, who have not taken part in, and, in the future will not take part in, any domestic or foreign court, military commission, or combatant status tribunal proceedings involving the Detainee or any matter arising as part of their official duties on the Special Litigation Team. The Special Litigation Team is authorized to advise the Privilege Team and represent the Privilege Team before military commissions with respect to the execution of the Privilege Team's duties.

60. "Legal Mail" means written communications between detainee's counsel and the detainee that are related to the counsel's representation of the detainee, as well as privileged documents and publicly filed legal documents relating to that representation, provided the communications do not threaten the security of the United States. Legal Mail does not include Contraband or Threat Information, as those terms are defined below. *See also* ¶ 68(g). The military commission is the final arbiter of whether material falls within the definition of Legal Mail.

61. "Non-Legal Mail" means any written material that is not Legal Mail, and includes, but is not limited to, letters from persons other than counsel, including family and friends of the detainee.

62. "Contraband" is material that, in the judgment of the Commander of JTF-GTMO, constitutes Contraband. Examples of Contraband include, but are not limited to, weapons, chemicals, drugs, and materials that may be used in an escape attempt. Contraband also includes, but is not limited to, money, stamps, cigarettes, and writing instruments.

63. "Threat Information" is any information that reasonably could be expected to result in immediate and substantial harm to national security, imminent acts of violence, or information learned from a Detainee involving future events that threaten national security.

## C. Requirements for Access to and Communications with Detainees

64. Security Clearance.

> a. Detainee's counsel must hold a valid, current United States security clearance at the TOP SECRET/SENSITIVE COMPARTMENTED INFORMATION level and complete a non-disclosure agreement to have access to HVDs. Counsel must hold a valid, current United States security clearance at the SECRET level and complete a non-disclosure agreement to have access to non-HVDs, unless otherwise required. The Chief Defense Counsel may determine that a clearance at a higher level, or its equivalent, is appropriate and if so, may request of appropriate officials that the process be initiated to secure such higher level access.

> b. Detainee's counsel who possess a valid security clearance shall provide, in writing, the date of their background investigation, the date such clearance was granted, the level of the clearance, and the agency that granted the clearance. Access will be granted only after DoD verification of the security clearance and a completed non-disclosure agreement.

c. Detainee's counsel who do not currently possess a clearance at the appropriate level are required to submit an application for clearance to the Department of Defense through the SSO.

65. Acknowledgment of and Compliance with Access Procedures.

a. Before being granted access to a detainee, counsel will receive a copy of these Procedures. To have access to a detainee, detainee's counsel must agree to comply fully with these Procedures and must sign an affirmation acknowledging an agreement to comply with them. This affirmation will be signed by each detainee's counsel who is granted access, both before (using the format attached hereto as Exhibit C) and after (using the format attached hereto as Exhibit D) each visit.

b. This affirmation will not be considered an acknowledgment by detainee's counsel that these Procedures are legally permissible. Even if detainee's counsel elect to challenge these Procedures, detainee's counsel may not knowingly disobey an obligation imposed by these Procedures.

c. It is required that detainee's counsel, detainee's counsel's staff, and anyone acting on detainee's counsel's behalf or at the direction of detainee's counsel will fully abide by the requirements of these Procedures. Detainee's counsel are required to provide DoD with signed affirmations from interpreters and translators, experts, consultants, witnesses, paralegals, investigators and all other personnel or support staff employed or engaged to assist in the litigation, upon utilization of those individuals by detainee's counsel in a manner that implicates these Procedures.

d. Should detainee's counsel fail to comply with these Procedures, access to or communication with detainees will not be permitted.

66. Verification of Representation.

a. Prior to being permitted access to a detainee pursuant to these Procedures, detainee's counsel must provide DoD with a Notification of Representation. This notification must include detainee's counsel's licensing information, business and email addresses, and telephone number, as well as the name of the detainee counsel represents. Additionally, detainee's counsel shall provide evidence of their authority to represent the detainee.

b. If detainee's counsel withdraws from representation of a detainee, or if the representation is otherwise terminated, detainee's counsel shall inform DoD immediately of that change in circumstances.

c. Civilian counsel representing a detainee must provide DoD with a signed representation stating (a) that, to the best of counsel's knowledge after reasonable

inquiry, payments in satisfaction of any counsel fees or for reimbursement of expenses are not funded directly or indirectly by persons or entities connected to terrorism or the product of terrorist activities, including "Specially Designated Global Terrorists," identified pursuant to Exec. Order No. 13,224, 66 Fed. Reg. 49,079 (Sept. 23, 2001) or Exec. Order No. 12,947, 60 Fed. Reg. 5079 (Jan. 23, 1995), and (b) counsel has complied with ABA Model Rule 1.8(f).

67. Logistics of Counsel Visits.

    a. Detainee's counsel shall submit to the JTF-GTMO, any request to meet with a detainee.

        (1) Each such request shall specify dates of availability for a meeting, the desired duration of the meeting, and the language that will be utilized during the meeting with the detainee.

            (a) Detainees and detainee's counsel will speak in the same language during visits to the maximum extent possible.

            (b) Translators will only translate the conversation that takes place between detainees and detainee's counsel. Private conversations of any kind or duration between translators and detainees are strictly prohibited.

        (2) Reasonable efforts will be made to accommodate counsel's requests regarding the scheduling of a meeting. Once a request is approved, JTF-GTMO will contact counsel with the date and duration of the meeting.

    b. Legal visits shall take place in a room designated by JTF-GTMO. No more than two attorneys (or one attorney and one assistant) plus one interpreter/translator shall visit with a detainee at one time, unless approved in advance by the Commander, JTF-GTMO. Such approval shall not be unreasonably withheld.

    c. Due to the mission and location of JTF-GTMO, certain logistical details, including arrangements for travel and lodging, will need to be coordinated by counsel prior to arrival. JTF-GTMO and/or the Office of Military Commissions will provide specific information regarding these issues.

    d. In order to travel to GTMO, counsel must have a country and theater clearance for that specific visit. In order to begin processing country and theater clearances, counsel must have confirmed flight information for travel to GTMO and a valid, current United States security clearance at the SECRET level or higher or its equivalent, as determined by appropriate DoD intelligence personnel. Country and theater clearances require 20 days to process. Accordingly, counsel shall provide DoD, through the SSO, with the required information no later than 20

days prior to the GTMO visit date, or as soon as a visit is scheduled. Requests for visits made inside of 20 days will not normally be granted.

Case 1:08-cv-02083-RLF Document 111-1 Filed 03/07/11 Page 18 of 34

e. Military defense counsel and defense paralegals, as sponsors, are responsible for escorting non-DoD civilian defense counsel, non-DoD civilian experts, and other non-DoD witnesses and members of a defense team while at GTMO. The military escort/sponsor will accompany any non-DoD civilians to the JTF-GTMO area of operations before any meetings, will accompany such non-DoD civilians through security screening, will accompany such non-DoD civilians for lunch (other than breaks in meetings), and will escort such non-DoD civilians from the JTF-GTMO area of operations at the close of business. Once non-DoD civilians are within the designated meeting location, the military escort/sponsor will leave a recall phone number with JTF-GTMO personnel.

## D. Procedures for Correspondence between Counsel and Detainees

68. Mail Sent by Counsel to Detainees ("Incoming Mail").

a. Detainee's counsel shall send all Incoming Mail for detainees to the Privilege Team at the appropriate address provided by government counsel. Each envelope or mailer containing Incoming Mail shall be labeled with the detainee's name and Internment Serial Number ("ISN") and shall include a return address for counsel sending the materials. The outside of the envelope or mailer for Incoming Mail shall be labeled clearly with the following annotation: "Attorney-Detainee Materials--For Mail Delivery to Detainee."

b. Each page of Incoming Mail shall be labeled "Attorney-Detainee Materials" and include markings which indicate the detainee for whom the materials are intended. No staples, paper clips or any non-paper items shall be included with the documents.

c. Upon receiving Incoming Mail from counsel for delivery to the detainee, the Privilege Team shall open the envelope or mailer to review the contents for Contraband, Non-Legal Mail, or Threat Information. Within two business days of receipt of Incoming Mail and assuming no Contraband, Non-Legal Mail or Threat Information is present, the Privilege Team shall forward the Legal Mail contained within the Incoming Mail to military personnel at JTF-GTMO in a sealed envelope marked "Legal Mail Approved by Privilege Team" and clearly indicating the identity of the detainee to whom the Legal Mail is to be delivered. The Privilege Team should return to the sender any Incoming Mail that is Non-Legal Mail. The Privilege Team may, in its discretion, return Contraband to the sender or forward it to military personnel at JTF-GTMO. Contraband shall only be delivered to a detainee with the permission of the Commander of JTF-GTMO. Threat Information shall be handled in accordance with ¶ 85 of this order.

d. Within two business days of receipt of Incoming Mail from the Privilege Team, personnel at JTF-GTMO shall deliver the envelope or mailer marked by the Privilege Team as "Legal Mail Approved by the Privilege Team" to the detainee without opening the envelope or mailer outside the presence of the detainee. If detainee's counsel desires confirmation that the Incoming Mail was delivered to the detainee, counsel shall provide an un-stamped, self-addressed envelope for that purpose. The detainee shall be responsible for mailing any confirmation of delivery to detainee's counsel as outgoing Legal Mail. This method shall be the sole and exclusive means by which confirmation of delivery is provided to detainee's counsel.

e. Incoming Non-Legal Mail shall be sent through the United States Postal Service to the appropriate address provided by government counsel. Incoming Non-Legal Mail will be reviewed by military personnel at JTF-GTMO under the standard operating procedures for detainee Non-Legal Mail.

f. Counsel shall treat all information learned from a high-value detainee (HVD), including any oral and written communications with an HVD, as classified information at the TS/SCI level, as defined by ¶ 8 of this order, unless and until the information is submitted to an original classification authority which determines it to be unclassified. Accordingly, if counsel's correspondence contains any summary or recitation of or reference to a communication with an HVD that has not been previously determined to be unclassified, the correspondence shall be prepared, marked, transported and handled as classified material at the TS/SCI level as required by ¶ 21 of this order.

g. In addition to the limitations above, written and oral communications with a detainee, including all Incoming Mail, shall not include any of the following information, in any form, unless directly related to counsel's defense of a detainee in the military commission cases:

    1. Information relating to any ongoing or completed military, intelligence, security, or law enforcement operations, investigations, or arrests, or the results of such activities, by any nation or agency;

    2. Information relating to current political events in any country;

    3. Information relating to security procedures at JTF-GTMO, including names of U.S. Government personnel and the layout of camp facilities; or

    4. Information relating to the status of other detainees.

69. <u>Mail Sent by Detainees to Counsel ("Outgoing Mail")</u>.

    a.  Detainees will be provided with paper to prepare Outgoing Mail.  In the presence of military personnel, the detainee will seal the Outgoing Mail in an

and ISN and detainee's counsel's names. Outgoing Non-Legal Mail from
detainees addressed to persons other than the detainee's counsel, including family,
friends, or other attorneys, shall be processed according to the standard operating
procedures for outgoing Non-Legal Mail.

b. Any Outgoing Mail from an HVD will be handled as if it is classified at the
TS/SCI level, as defined by ¶ 8, of this order.

c. Military personnel will collect the Outgoing Mail within one business day of
being notified by a detainee that the communication is prepared for sealing and
mailing.

d. After Outgoing Mail is collected from a detainee, the envelope will be sealed
into a larger envelope by military personnel at Guantanamo. The larger envelope
will be marked as "Attorney-Detainee Materials--For Mail Delivery to Detainee's
Counsel" and will be annotated with the counsel's name and the detainee's ISN.
The envelope will be sealed and transferred in the manner required for classified
materials. Within two business days of receipt from the detainee, Outgoing Mail
will be mailed to the secure facility provided for detainee's counsel at the
appropriate address as provided by government counsel.

(1) Outgoing Mail from detainees who are not HVDs may contain
classified material and will be handled in the manner required for materials
classified at the SECRET level as provided by ¶ 21 of this order until received by
detainee's counsel.

(2) Outgoing Mail from detainees who are HVDs will be transferred in the
manner required for materials classified at the TS/SCI level as provided by ¶ 21 of
this order.

e. Outgoing Mail will be placed in a courier bag, which will then be locked and
provided to a Privilege Team member at GTMO. The Privilege Team member
will send all approved Legal Mail to the appropriate secure facility for the
detainee's counsel in Washington DC through a secure point-to-point transfer
system, or via a government-designated courier in a sealed container, in a manner
designed to protect the classified material and attorney-client and related
privileges. All originals of Outgoing Mail will be stored in a safe location in the
secure area at GTMO in a manner designed to protect the classified material and
attorney-client and related privileges until properly transferred by a government-
designated courier. The Privilege Team will notify counsel via e-mail when
Outgoing Mail is received at the secure facility in the Washington DC area.

f. Detainees also are permitted to send Non-Legal Mail through the United States
Postal Service. These communications shall be reviewed by military personnel at

JTF-GTMO under the standard operating procedures for detainee Non-Legal Mail.

Case 1:08-cv-02083-PLF   Document 111-1   Filed 03/07/11   Page 21 of 34

g. In the event Non-Legal Mail is received by detainee's counsel, including Non-Legal Mail mixed within Legal Mail, detainee's counsel shall return the Non-Legal Mail through the Privilege Team to military personnel at JTF-GTMO for processing according to the standard operating procedures for detainee Non-Legal Mail.

h. Classified information may not be sent by a detainee in accordance with the procedures for Non-Legal Mail.

## E. Materials Brought Into Meetings with Detainees and Counsel

70.    Detainee's counsel shall bring into the meeting only that which constitutes Legal Mail, as defined in ¶ 60, and that has been previously reviewed, approved, and appropriately stamped by the Privilege Team, along with writing utensils and paper approved by the Privilege Team. In addition, the Privilege Team shall not unreasonably withhold approval for counsel to bring into an initial meeting with a detainee letters, tapes, or other communications introducing counsel to the detainee, if the Privilege Team has first reviewed the communication and determined that sharing the communication with the detainee would not threaten the security of the United States. All Legal Mail detainee's counsel seeks to bring into a meeting with a detainee must be processed in accordance with the general review procedures of ¶ 68, and be submitted to the Privilege Team for review and return at least 7 days prior to counsel's scheduled visit. During a meeting counsel may provide the detainee with any material that was approved to be brought into the meeting. Subject to an additional review for Contraband by personnel at JTF-GTMO, the detainee may bring back to his cell Legal Mail provided by counsel, as well as any documents, notes, and communications created by the detainee and counsel during the course of the meeting.

## F. Materials Brought Out of Meetings between Detainees and Counsel

71. Materials brought out of meetings between HVDs and detainee's counsel are presumptively classified at the TS/SCI level. Upon completion of detainee's counsel's visit to HVDs at Guantanamo, the notes or documents used or produced during the visits shall be sealed in counsel's presence and placed in an envelope labeled as "Attorney-Detainee Meeting Documents–For Delivery to Counsel." The envelope shall be sealed into a larger envelope by military personnel at Guantanamo. The larger envelope shall be marked as "Attorney-Detainee Meeting Documents--For Mail Delivery to Counsel" and annotated with the counsel's name and the detainee's name and ISN. In all instances, the larger envelope will be placed in a courier bag, which will then be locked and provided to a Privilege Team member at GTMO. The Privilege Team member will send the materials to the appropriate secure facility for the detainee's counsel in Washington DC through a secure point-to-point transfer system, or via a government-designated courier in a sealed container, in a manner designed to protect the classified material and attorney-

client confidentiality. All original materials will be stored in a safe location in the secure area at GTMO in a manner designed to protect the classified material and attorney-client confidentiality. The Privilege Team will notify detainee's counsel via e-mail when the materials are received at the secure facility in the Washington DC area.

72. Materials brought out of meetings between non-high value detainees and detainee's counsel may contain classified information. A detainee's counsel who knows, or reasonably should know, material brought out of meetings with non-HVDs contains classified information, will, upon completion of each meeting or during any break in a meeting session, give the notes, documents or materials used or produced during the meeting to a designated individual at the JTF-GTMO Joint Detention Group to be handled in the manner required for materials classified at the SECRET level or higher, as necessary. These materials shall be sealed in counsel's presence and must be stored, handled, and transported as classified material as provided under ¶ 21 of this order. If further meetings are scheduled at which some or all of the materials may be used, counsel will identify which materials will be used, and the identified materials will be placed in a separate envelope and made available to counsel for use at the next meeting. The Privilege Team will review materials brought out of earlier meetings that were previously found to be unclassified only to determine if they were modified in any way.

73. Correspondence or messages from a detainee to individuals other than his counsel, including family, friends, or other attorneys, will not be handled through this process. If a detainee provides these communications to counsel during a visit, counsel shall give those communications to military personnel at Guantanamo so they can be processed under the standard operating procedures for detainee Non-Legal Mail.

## G. Telephonic Access to Detainees

74. Requests for telephonic access to a detainee by detainee's counsel or other persons will not normally be approved. Such requests may be considered on a case-by-case basis due to special circumstances and must be submitted to the Commander, JTF-GTMO.

75. Any telephonic access by detainee's counsel is subject to appropriate security procedures, including contemporaneous monitoring and recording. Any telephonic access between detainee's counsel and a detainee over either secure or non-secure systems may be subject to appropriate security procedures, including contemporaneous monitoring and recording by the Privilege Team.

## H. Counsel's Handling and Dissemination of Information from Detainees

76. Subject to the terms of the Protective Order, Section I, and any other applicable protective order, detainee's counsel may disseminate the unclassified contents of a detainee's communications for purposes related to his or her representation of that detainee.

77. Detainee's counsel shall treat all information learned from an HVD, including any oral and written communications with an HVD, as classified information at the TS/SCI level, as defined by ¶ 8 of this order, unless and until the information is submitted to the appropriate government agency and determined to be otherwise. All classified material must be handled, transported and stored in a secure manner, as provided by ¶ 21 of this order.

78. Detainee's counsel shall disclose to DoD or the Commander, JTF-GTMO, any Threat Information learned from a detainee.

79. Detainee's counsel may not divulge classified information not learned from the detainee to the detainee. Detainee's counsel may not divulge classified information related to a detainee's case to anyone except those with the requisite security clearance and approved need-to-know using a secure means of communication.

## I. Classification Determination of Detainee Communications

80. Detainee's counsel may submit presumptively classified information learned from a detainee through the Commission Security Officer to the appropriate government agency authorized to declassify the information for declassification or a determination of its appropriate security classification level. Detainee's counsel shall memorialize the information submitted for declassification or classification review in a written memorandum outlining as specifically as possible the information for which counsel requests a determination. All documents submitted for declassification or classification review shall be prepared, handled, and treated in the manner required for classified materials as required by ¶ 21 of this order. Materials submitted for declassification or classification review are not protected by the attorney-client privilege. The appropriate government agency authorized to declassify the presumptively classified information will inform detainee's counsel of the determination once it is made through the Commission Security Officer. If the determination is not to declassify and detainee's counsel believes the information is necessary for the detainee to receive, detainee's counsel may request relief from the military commission through the procedures established by the Military Commissions Act of 2009 and promulgated in the Manual for Military Commissions.

81. Detainee's counsel shall send all materials submitted for declassification or classification review through the Commission Security Officer to the appropriate government agency authorized to declassify the classified information at the appropriate address as provided by government counsel. The outside of the envelope or mailer shall be clearly labeled "Attorney-Detainee Meeting Documents--For Declassification/ Classification Review." Each envelope or mailer shall be annotated with the detainee's name and ISN and counsel's names. Each page of the document submitted for declassification or classification review shall be marked "Attorney-Detainee Materials" and "Classified." All materials submitted for declassification or classification review must be in legible handwriting or transcribed by typewriter or computer. Materials that are not in English must be accompanied by an English translation. The envelope or mailer shall be sealed and mailed in the manner required for classified materials.

23

82. As soon as possible after conducting the declassification or classification review, the appropriate government agency shall advise counsel of the classification levels of the information contained in the materials submitted for review. The appropriate government agency shall forward its classification determination through the Commission Security Officer to detainee's counsel after a review and analysis period not to exceed, from the time of receipt by the government agency:

> a. fourteen business days for information written in English;

> b. twenty-one business days for any information that includes writing in any language other than English, to allow for translations by the government agency; and

> c. twenty-eight business days for any information where the government agency has reason to believe that a code was used, to allow for further analysis.

## J. Materials Shared Between Detainees

83. No materials, either Legal Mail or non-Legal Mail, are permitted to be exchanged directly between detainees unless authorized by the JTF-GTMO Commander or, after referral, the military judge. If a detainee in a military commission is authorized to proceed *pro se*, the military judge may authorize special procedures to facilitate the exchange of information necessary for a *pro se* detainee to prepare a defense. However, all written materials provided to a *pro se* detainee must be first reviewed by the Privilege Team under the same standards applicable to detainees represented by counsel.

## K. Disclosure of Information by the Privilege Team

84. Privilege Team members shall not disclose outside the Privilege Team any information obtained as a result of the review contemplated in this Order and these Procedures, unless the information is disclosed by the detainee or his counsel to the public or in a court filing, the detainee or his counsel has consented to the disclosure of the information, or the information is shared pursuant to ¶¶ 85 and 86, *infra*.

85. The Privilege Team shall report promptly to the Commander, JTF-GTMO, any Threat Information it discovers in the course of the review contemplated in this Order and these Procedures. In his discretion, the Commander of JTF-GTMO may disseminate Threat Information to the relevant law enforcement, military, and intelligence officials. In disclosing or disseminating Threat Information, the Privilege Team and/or the Commander of JTF-GTMO shall provide the information only to those with a need to know, while masking the source of the information to the greatest extent practicable, and take appropriate steps to ensure that any information appropriately protected by the attorney-client or other privilege is not provided to persons participating in the prosecution of detainees, either at the time of the dissemination, or when any derivative

disseminations are made, or when files are reviewed by prosecutors during the course of a prosecution.

Case 1:08-cv-02083-PLF   Document 111-1   Filed 03/07/11   Page 25 of 34

86. The Privilege Team may disclose to the Special Litigation Team information obtained from a detainee or detainee's counsel for the purpose of representing the Privilege Team before a military commission. The Special Litigation Team may not disclose information provided by the Privilege Team except as required to represent the Privilege Team before the military commission, and shall take such measures as are necessary to protect privileged material. Through the Special Litigation Team, the Privilege Team may inform the military commission of any issues or problems related to the release or processing of information related to a case.

## L. JTF-GTMO Security Procedures

87. Detainee's counsel shall comply with the following security procedures and force protection safeguards applicable to the U.S. Naval Station in Guantanamo Bay, Cuba, JTF-GTMO and the personnel assigned to or visiting these locations, as well as any supplemental procedures implemented by JTF-GTMO personnel.

a. Contraband is not permitted in the detention facility at JTF-GTMO, and all visitors are subject to search upon arrival and departure. No items of any kind may be provided to a detainee without the advance approval of the Commander, JTF-GTMO.

b. Photography or recording of any type is prohibited without the prior approval of the Commander, JTF-GTMO. No electronic communication devices are permitted. All recording devices, cameras, pagers, cellular phones, PDAs, laptops, portable electronic devices and related equipment are prohibited in or near the detention facility at JTF-GTMO. Should any of these devices be inadvertently taken into a prohibited area, the device must be surrendered to JTF-GTMO staff and purged of all information.

c. Upon arrival at JTF-GTMO, security personnel will perform a Contraband inspection of detainee's counsel using metal detectors, as well as a physical inspection of detainee's counsel's bags and briefcases and, if determined necessary, a physical inspection of detainee's counsel's persons. This inspection will include verification that the materials detainee's counsel seek to bring into the meeting have been previously reviewed, approved, and appropriately stamped by the Privilege Team.  No materials may be brought into a counsel-detainee meeting that have not been reviewed, approved, and appropriately stamped by the Privilege Team.

d. Detainee's counsel shall not interview or question members of the Joint Task Force about their duties or interactions with detainees without first obtaining permission from the Commander, JTF-GTMO. Should permission be

unreasonably denied, detainee's counsel may seek an order from the military
commission granting permission for good cause shown.

Case 1:08-cv-02083-RLF   Document 1b1-1   Filed 03/07/11   Page 26 of 34

e. Detainee's counsel will meet with detainees in conference facilities provided by
JTF-GTMO. These facilities are subject to visual monitoring by closed circuit TV
for safety and security reasons. The only other method of visual observation
available is for the door to remain open with appropriate JTF-GTMO personnel
sitting outside the door. No oral communications between counsel and the
detainees will be heard.

f. At the conclusion of meetings with detainees, detainee's counsel will again be
inspected using a metal detector and, if deemed necessary, by physical inspection
of their persons.

88. The above Protective Order and Procedures for Counsel Access to Detainees at the
U.S. Naval Station in Guantanamo Bay, Cuba, are effective beginning March 21, 2011,
unless amended, modified, or revoked.

4 MARCH 2011
(Date)

Bruce MacDonald
Director, Office of the Convening Authority, and
Convening Authority for Military Commissions

26

# Exhibit A

## OFFICE OF THE SECRETARY OF DEFENSE
## OFFICE OF MILITARY COMMISSIONS

### MEMORANDUM OF UNDERSTANDING REGARDING ACCESS TO
### CLASSIFIED NATIONAL SECURITY INFORMATION

Having familiarized myself with the applicable statutes, regulations, and orders related to, but not limited to, unauthorized disclosure of classified information, espionage and related offenses; the Intelligence Identities Protection Act, 50 U.S.C. § 421; 18 U.S.C. § 641; 50 U.S.C. § 783; 28 C.F.R. § 17 et seq.; and Executive Order 13526; I understand that I may be the recipient of information and documents that belong to the United States and concern the present and future security of the United States, and that such documents and information together with the methods and sources of collecting it are classified by the United States government. In consideration for the disclosure of classified information and documents:

(1) I agree that I shall never divulge, publish, or reveal either by word, conduct or any other means, such classified documents and information unless specifically authorized in writing to do so by an authorized representative of the United States government, or as expressly authorized by the Protective Order issued by the Office of Military Commissions on March 4, 2011.

(2) I agree that this Memorandum of Understanding and any other non-disclosure agreement signed by me will remain forever binding on me.

(3) I have received, read, and understand the Protective Order issued by the Office of Military Commissions on March 4, 2011, and I agree to comply with the provisions thereof.

_____          _____
Signature                                                              Date



_____
Printed Name

_____
Address

_____
Telephone

# Exhibit B

## ACKNOWLEDGMENT

The undersigned hereby acknowledges that he/she has read the Protective Order issued by the Convening Authority, Office of Military Commissions, dated March 4, 2011, understands its terms, and agrees to be bound by each of those terms. Specifically, and without limitation, the undersigned agrees not to use or disclose any protected information or documents made available to him/her other than as provided by the Protective Order. The undersigned acknowledges that his/her duties under the Protective Order shall survive the termination of this case and are permanently binding, and that failure to comply with the terms of the Protective Order may result in the imposition of administrative, civil and/or criminal sanctions under law.

SIGNED: _____ _____    DATED: _____

_____
      Printed Name

_____
      Address

_____
      Telephone

# Exhibit C

**EXHIBIT C**

## ACKNOWLEDGMENT OF COMPLIANCE WITH ACCESS PROCEDURES
### (prior to each visit)

The undersigned hereby acknowledges that he/she has read the Procedures for Counsel Access to Detainees at the U.S. Naval Station in Guantanamo Bay, Cuba (hereafter, "Procedures"), issued by the Convening Authority, Office of Military Commissions, dated March 4, 2011, understands its terms, and agrees to be bound by each of those terms. Specifically, and without limitation, the undersigned agrees not to use or disclose any classified or protected information or documents made available to him/her other than as provided by the Procedures. The undersigned further agrees not to communicate or otherwise pass messages to, from or among the detainees that are otherwise prohibited by the Procedures. The undersigned acknowledges that his/her duties under the Procedures shall survive the termination of this case and are permanently binding, and that failure to comply with the terms of the Protective Order may result in the imposition of administrative, civil and/or criminal sanctions under law.


SIGNED: ___ _____     DATE/TIME:_____


_____
    Printed Name

_____
    Address

_____
    Telephone

# Exhibit D

## ACKNOWLEDGMENT OF COMPLIANCE WITH ACCESS PROCEDURES
### (after each visit)

The undersigned hereby acknowledges that he/she has read the Procedures for Counsel Access to Detainees at the U.S. Naval Station in Guantanamo Bay, Cuba (hereafter, "Procedures"), issued by the Convening Authority, Office of Military Commissions, dated March 4, 2011, understands its terms, and agrees to be bound by each of those terms. The undersigned further affirms that, during the visit just completed on the date and time indicated below, he/she has not communicated or otherwise passed prohibited messages or information to, from or among the detainees and has not otherwise violated the terms of the Procedures. The undersigned acknowledges that his/her duties under the Procedures  shall survive the termination of this case and are permanently binding, and that failure to comply with the terms of the Protective Order may result in the imposition of administrative, civil and/or criminal sanctions under law.


SIGNED: _____     DATE/TIME: _____


_____
Printed Name

_____
Address

_____
Telephone